Peter J. EBERTZ, Appellant,

v.

Denise J. EBERTZ, Appellee.

No. S–11190.

Supreme Court of Alaska.

June 3, 2005.

---

ed shared custody of the third child, and ordered Ebertz to pay part of Bahma–Ebertz's attorney's fees. Ebertz appeals, challenging the sufficiency of the superior court's custody findings, its decision to grant custody to Bahma–Ebertz, and its award of partial attorney's fees. We affirm, holding that the superior court sufficiently addressed the statutory best-interests factors, that the record supports its custody decision, and that the court did not abuse its discretion in awarding partial attorney's fees.

## II. FACTS AND PROCEEDINGS

Peter Ebertz and Denise Bahma–Ebertz married in December 1989. They have three children together, Zackery, Alicia, and Mitchell. Bahma–Ebertz took care of the children during most of the marriage, while Ebertz worked outside the home. Both parties served in the military in some capacity through much of the marriage. Bahma–Ebertz left her part-time position with the Alaska National Guard in 1998.

The couple lived in Wasilla until 1997, when the Alaska National Guard transferred Ebertz to Bethel. Bahma–Ebertz and the children remained in Wasilla for two years before joining Ebertz in Bethel. In 2001 Ebertz received transfer orders back to Wasilla, but Bahma–Ebertz decided to stay with the children in Bethel rather than return to Wasilla. This living arrangement strained the marriage, and Ebertz filed for divorce in March 2002.

The superior court entered an interim order granting custody of the children to Bahma–Ebertz and appointed a custody investigator, who interviewed the family and prepared a report recommending that the court award custody to Ebertz. The court then modified the interim custody order by granting interim custody of Zackery to Ebertz.

In early 2003 the superior court held a custody hearing and received testimony from over twenty witnesses, including the custody investigator. The investigator testified that,

Phyllis A. Shepherd, Anchorage, for Appellant.

Michele Power, Angstman Law Office, Bethel, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

### OPINION

BRYNER, Chief Justice.

## I. INTRODUCTION

Peter Ebertz and Denise Bahma–Ebertz divorced in 2002.[1] A court-appointed custody investigator recommended that Ebertz receive custody of the couple's three children. Following a custody hearing, the superior court awarded physical and legal custody of two of the children to Bahma–Ebertz, award-

---

1. Before their divorce, Denise Bahma–Ebertz's last name was Ebertz. The divorce decree changed her name to Bahma–Ebertz. For the sake of consistency, we have retained the original caption in this case (*Ebertz v. Ebertz*), but throughout the opinion, we refer to the appellee as Bahma–Ebertz.

in his opinion, it was in the children's best interests for Ebertz to have custody. Despite the custody investigator's recommendations, the court awarded Bahma–Ebertz sole legal and physical custody of Alicia and Mitchell. The court awarded shared physical custody of Zackery, placing him with Bahma–Ebertz during the school year and Ebertz during the summer months. The court also ordered Ebertz to pay forty-five percent of Bahma–Ebertz's attorney's fees.

Ebertz appeals the award of custody and attorney's fees.

## III. DISCUSSION

### A. Standard of Review

Whether the superior court applied the correct legal standard presents a question of law that we review *de novo*.[2] Trial courts have broad discretion in determining child custody.[3] We will set aside the superior court's custody determination only if the court abused its discretion or if its findings of fact are clearly erroneous.[4] The superior court abuses its discretion if it "consider[s] improper factors in making its custody determination, fails to consider statutorily mandated factors, or assign[s] disproportionate weight to particular factors while ignoring others."[5] Factual findings are clearly erroneous when, based on the entire record, they leave us "with a definite and firm conviction ... that a mistake has been made, even though there may be evidence to support the finding."[6] We give "particular deference" to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence.[7]

In divorce proceedings, a trial court has broad discretion to award attorney's fees, and we will not reverse the court's award unless its decision is "arbitrary, capricious, or manifestly unreasonable."[8]

### B. The Superior Court's Custody Determination

#### 1. The legal standard for determining child custody

Ebertz first argues that the superior court treated this case as an action to modify an existing custody order rather than as an action to determine initial custody. In its final findings, the court awarded "physical and legal custody of Mitchell and Alicia to [Bahma–Ebertz] based on the amount of time they have spent with their mother, the fact that they are both doing very well in [Bahma–Ebertz's] care." Because the interim custody order, entered soon after Ebertz filed for divorce, granted physical and legal custody to Bahma–Ebertz, Ebertz maintains that the court's final custody order demonstrates that the court required him to show changed circumstances "sufficient to justify any change in the custody situation."

Bahma–Ebertz responds that the superior court did not require Ebertz to show a significant change in circumstances before determining the children's best interests. She points out that the court specifically stated that it was basing its decision on a best-interests analysis. She argues that the court's discussion regarding the " 'amount of time' the children had spent with their mother" did not require Ebertz to show that circumstances had changed since the interim order, but simply recognized that the children had spent most of their lives with Bahma–Ebertz. She asserts that although the superior court may consider interim custody

2. *Moeller–Prokosch v. Prokosch*, 27 P.3d 314, 316 (Alaska 2001).

3. *Smith v. Weekley*, 73 P.3d 1219, 1222 (Alaska 2003).

4. *Hamilton v. Hamilton*, 42 P.3d 1107, 1111 (Alaska 2002).

5. *Barrett v. Alguire*, 35 P.3d 1, 5 n. 5 (Alaska 2001) (citing *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 134 (Alaska 1997)).

6. *Jenkins v. Handel*, 10 P.3d 586, 588 (Alaska 2000).

7. *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001).

8. *Sloane v. Sloane*, 18 P.3d 60, 63–64 (Alaska 2001).

in its final determination,[9] it did not do so in this case.

■■■ The trial court must base an initial custody determination on the children's best interests, using the factors listed in AS 25.24.150(c).[10] In contrast, modifying an existing custody order entails a two-step process: the parent seeking modification must establish a significant change in circumstances affecting the child's best interests; only if the parent makes this showing does the court proceed to determine whether modification is in the best interests of the child.[11]

Here, the court found that Bahma–Ebertz was the primary caregiver of all three children throughout most of their lives, while Ebertz spent considerable time away from the children because of his work schedule. The court found that Ebertz lived in Bethel, away from his children, for most of 1997–1999. After his family joined him in Bethel, Ebertz transferred back to Wasilla in August 2001, while Bahma–Ebertz and the children remained in Bethel. The court noted that "[i]n August 2003, it will be another two years he has not lived with the two younger children." Though recognizing that "there has not been an excessive amount of stability for these children, what with their move and their father coming in and out of their lives," the court found that "these children appear to be[ ] doing very well." The court then granted custody to Bahma–Ebertz "based on the amount of time they have spent with their mother."

When viewed as a whole, these findings fail to substantiate Ebertz's claim that the court focused exclusively on the children's situation after the interim custody order was entered. To the contrary, the court's discussion of Ebertz's time away from the family establishes that the court considered the children's situation over the span of their lives. We agree with Bahma–Ebertz that the superior court did not base its order on Ebertz's failure to show that circumstances had changed since the interim custody order issued.

## 2. Rejection of the custody investigator's recommendations

Ebertz next argues that the superior court abused its discretion in rejecting the custody investigator's recommendations. Because the investigator expressly considered all the statutory best-interests factors, Ebertz contends, the court abused its discretion by rejecting his recommendations and relying instead on a single statutory factor—the length of time the children have lived with Bahma–Ebertz and the desirability of continuing the existing arrangement.[12] Bahma–Ebertz responds that the superior court considered the disputed statutory factors and insists that "it cannot be the case that the only way to 'properly' consider a statutory factor is to follow the custody investigator's recommendation."

■■■ We agree with Bahma–Ebertz on this point. Ebertz's argument suggests that a custody investigator's recommendations deserve special status and should presumptively be followed. Yet we have previously recognized that custody investigators are simply expert witnesses and that their recommendations should be evaluated on a case-by-case basis, in the same manner as testimony presented by other witnesses.[13] Here, the superior court accepted testimony from over twenty witnesses. Some of this testimony contradicted the investigator's recommendations, while other testimony agreed with those recommendations. We have held that a court may reject a custody investigator's recommendations and rely on other evidence as long as the court's findings are not clearly erroneous.[14] The critical question, then, is

9. Citing *Smith*, 73 P.3d at 1224.

10. *West v. West*, 21 P.3d 838, 841 (Alaska 2001).

11. *Barrett*, 35 P.3d at 5, 6.

12. *See* AS 25.24.150(c)(5) (listing as one of the best-interests factors "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity").

13. *See State v. Phillips*, 470 P.2d 266, 272 (Alaska 1970) (stating that "[t]he weight to be given to expert testimony is within the province of the trier of fact").

14. *Rooney v. Rooney*, 914 P.2d 212, 219 (Alaska 1996).

not whether the superior court erred in rejecting the custody investigator's proposed decision, but whether the evidence as a whole supports the court's decision. Because Ebertz separately argues that the court's custody decision is not supported by the evidence, we will consider that issue below.

### 3. Adequacy of the superior court's findings and sufficiency of evidence to support them

Ebertz argues that the court's custody findings are deficient because they address only one of the nine statutory factors used to determine the children's best interests: [15] "the length of time the child[ren] ha[ve] lived in a stable, satisfactory environment and the desirability of maintaining continuity," which is the fifth statutory best-interests factor.[16] He argues that "even the most cursory review of the record ... demonstrates that the trial court abused its discretion ... in its application of [the] evidence to 'the best interests of the minor children.'" Bahma–Ebertz responds that the court was not required to discuss every statutory factor and that its written custody order establishes that the court did consider the factors that were disputed.

■■■ Bahma–Ebertz's argument has merit. Our cases hold that in determining the best interests of a child, the court need not discuss each statutory factor in detail; the court's findings will be sufficient if they "give us a clear indication of the factors which [the

court] considered important in exercising its discretion or allow us to glean from the record what considerations were involved." [17] Although the court's findings here are sparse and certainly could have been set out in greater detail, a review of those findings against the backdrop of the record "gives us a clear indication of the factors which the superior court considered important." [18]

The court discussed at length the fact that Ebertz lived away from the children for extended time periods. Despite this instability in the children's lives, the court noted that several witnesses testified that Alicia and Mitchell were doing well in Bahma–Ebertz's care. The court also discussed Zackery's special educational and emotional needs and the fact that Bahma–Ebertz arranged for Zackery to have counseling to help with these special needs. Thus, it appears the court addressed the social and emotional needs of the children and the parent's desire and ability to meet those needs—the first two statutory best-interests factors.[19] The court also discussed testimony that Ebertz once hit Zackery and that Bahma–Ebertz once left the children in the car on a very cold day. This discussion establishes that the court considered the issue of abuse or neglect by the parties—the seventh statutory custody factor.[20]

Ebertz additionally faults the superior court for failing to consider Bahma–Ebertz's tendency to exaggerate as a relevant point

---

**15.** The statutory custody factors are set out in AS 25.24.150(c). At the time the superior court issued its finding, subsection .150(c) provided in relevant part:

In determining the best interests of the child the court shall consider:
(1) the physical, emotional, mental, religious, and social needs of the child;
(2) the capability and desire of each parent to meet these needs;
(3) the child's preference if the child is of sufficient age and capacity to form a preference;
(4) the love and affection existing between the child and each parent;
(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
(6) the desire and ability of each parent to allow an open and loving frequent relationship between the child and the other parent;

(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;
(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;
(9) other factors that the court considers pertinent.

**16.** AS 25.24.150(c)(5).

**17.** *Smith*, 73 P.3d at 1225 (citing *Borchgrevink*, 941 P.2d at 139–40).

**18.** *Id.*

**19.** *See* AS 25.24.150(c)(1) and (2).

**20.** *See* AS 25.24.150(c)(7).

under the ninth subsection of the statutory best-interests provisions—a catchall provision that allows a court to consider any non-specified factor it deems pertinent to custody.[21] But the court did consider this factor, expressly noting that Bahma–Ebertz had acknowledged exaggerating certain facts.

■ In short, the record reveals that the court considered and discussed evidence relating to most of the statutory custody factors that were actively disputed, not just a single factor, as Ebertz alleges. The court's ultimate decision to give determinative weight to one of these factors and the consequent emphasis it placed on this factor do not, standing alone, establish that it ignored the remaining factors or gave them inadequate weight. Accordingly, we find no merit to Ebertz's claim that the superior court's findings are deficient as a matter of law because they address only a single custody factor.

A separate issue is whether the record supports the superior court's findings. Ebertz insists that it does not, arguing that the evidence at trial conclusively established that the children's best interests would not be served by awarding custody to Bahma–Ebertz. But our review of the record indicates that the superior court's decision is supported by substantial evidence.

The court heard testimony from several witnesses regarding each parent's ability to meet the needs of the children. The evidence showed that Bahma–Ebertz was the children's primary caretaker during the marriage and that Ebertz's job forced him to spend considerable time away from the children. Even the custody investigator's report, which recommended awarding custody to Ebertz, acknowledged that "[g]reater time lost with the father has been shown to correlate to high levels of problems in the area of aggression." In its final custody order, the superior court discussed its concern about Ebertz's extended absences from the children. The court also found that Zackery had anger problems in school and at home. Bahma–Ebertz had sent Zackery to counseling to help him deal with his emotional problems, and his teacher testified that Zackery started showing progress. Zackery's teacher also testified that Bahma–Ebertz checked with her on Zackery's progress approximately every two weeks. Alicia's teachers also testified that Alicia is on track academically. Bahma–Ebertz stayed with Alicia in Anchorage during Alicia's kidney surgery and participated regularly in the children's social activities, like Girl Scouts and baseball. All of this evidence bears on and substantially supports the court's findings regarding the first two statutory factors, "the physical, emotional, mental, religious, and social needs of the child[ren]"[22] and "the capability and desire of each parent to meet these needs."[23]

■ The court heard conflicting evidence concerning the next contested[24] factor, the children's stability in Bahma–Ebertz's home and the desirability of continuing their custody there.[25] Ebertz argues that the evidence clearly showed that Bahma–Ebertz's household was unsafe and unstable for the children. Bahma–Ebertz's brother testified that he was concerned about the living conditions at Bahma–Ebertz's house in Bethel after making a brief visit. He testified that there was very little food in the house and that the front door to the home continually froze shut. On the other hand, a private custody investigator found that Bahma–Ebertz's home was appropriately kept for children and that the children were clean and well fed. A friend of Bahma–Ebertz's testified that she visited Bahma–Ebertz's home approximately twenty times and found that Bahma–Ebertz kept it in good condition. Moreover, the court heard undisputed evidence that Ebertz had lived away from the children for most of their lives. Despite the presence of conflict-

**21.** *See* AS 25.24.150(c)(9).

**22.** AS 25.24.150(c)(1).

**23.** AS 25.24.150(c)(2).

**24.** The parties did not actively contend that the third or fourth statutory factors—the children's preference (AS 25.24.150(c)(3)) and the affection between the parents and their children (AS 25.24.150(c)(4))—had any relevance under the facts of this case, so there was no occasion for the superior court to address them.

**25.** *See* AS 25.24.150(c)(2).

ing testimony, then, substantial evidence supported the court's decision to weigh the stability factor as distinctly favoring Bahma–Ebertz. We have repeatedly emphasized that "it is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence." [26] We decline to second guess the superior court's decision to resolve this conflict in Bahma–Ebertz's favor.

Ebertz further argues that the court completely ignored "the almost constant disparagement expressed by Ms. Bahma–Ebertz against Mr. Ebertz"; he also maintains that Bahma–Ebertz does not allow him reasonable visitation. But the evidence revealed that both parents appear to have made negative remarks about each other. And there was testimony indicating that Bahma–Ebertz went out of her way to keep the children from hearing and making negative comments about Ebertz. For example, Bahma–Ebertz's mother testified that when the children made negative remarks about Ebertz, Bahma–Ebertz would reprimand them and tell them "he is your dad. He loves you and you do not talk ... like that about your dad." This evidence lends substantial support to the superior court's implicit decision that the sixth statutory custody factor—"the desire and ability of each parent to allow an open and loving frequent relationship between the child and the other parent" [27]—did not tilt strongly in either parent's favor.

The court similarly declined to rule that either party was favored under the seventh statutory factor—"domestic violence, child abuse, or child neglect in the proposed custodial household." [28] The court found that Ebertz had hit Zackery in the face on one occasion but found this to be an isolated incident. It also found that Bahma–Ebertz had once left the children in the car on a very cold day while she visited a friend. But this too was an isolated incident, and Bahma–Ebertz had testified that she left the children for only a brief period time. Ebertz contends that Bahma–Ebertz also neglected the children by allowing the windows and doors of her house to freeze shut. But the evidence suggests that this was caused by Bahma–Ebertz's misunderstanding of how her home's ventilation system worked. Substantial evidence supported the court's refusal to give this factor significant weight as to either party.

As to the eighth specified statutory factor—"substance abuse by either parent or other members of the household directly affect[ing] the emotional or physical well-being of the child" [29]—Ebertz argues that Bahma–Ebertz's use of prescription narcotics and her friendship with a "known alcoholic" had a detrimental effect on the children. But as Bahma–Ebertz accurately points out, no evidence was presented that the children had access to any of her medication or that her use of medication had any effect on them. And despite Ebertz's assertion to the contrary, there was no evidence that Bahma–Ebertz had a friendship with a "known alcoholic." The accusation related to a friend of Bahma–Ebertz's named Carl Bailey. Bailey testified that he used to brew his own beer as a hobby. But a tenant in Bailey's rooming house testified that she had never seen him consume excessive amounts of alcohol.

Ebertz further argues that the court should also have considered Bahma–Ebertz's tendency to exaggerate the truth. He asserts that Bahma–Ebertz "is a liar of such proportion as to easily lead to the conclusion that she is simply divorced from reality" and can never be trusted. In Ebertz's view, Bahma–Ebertz's alleged dishonesty deserves weight under the catchall provision of the best-interests statute, which allows reliance on any "other factors that the court considers pertinent." [30] Yet the superior court's custody decision demonstrates that the court did consider Bahma–Ebertz's admitted tendency to exaggerate, but evidently chose to give it minor weight. We see no basis for overturning the court's decision on this point, since,

**26.** *Knutson v. Knutson,* 973 P.2d 596, 599–600 (Alaska 1999).

**27.** AS 25.24.150(c)(6).

**28.** AS 25.24.150(c)(7).

**29.** AS 25.24.150(c)(8).

**30.** AS 25.24.150(c)(9).

as we have already mentioned, it is not our role as an appellate tribunal to second guess the trial court's decision on issues of credibility.

In summary, the record shows that the superior court weighed the extensive testimony of many witnesses and ultimately found, based on all the evidence, that the children's best interests would be served by awarding Bahma–Ebertz sole custody of Alicia and Mitchell and shared custody of Zackery. Our review of the record convinces us that the superior court's custody findings are well supported by substantial evidence. We thus hold that the findings are not clearly erroneous and that the custody decision does not amount to an abuse of discretion

## C. Attorney's Fees

Ebertz additionally asserts that the superior court abused its discretion in ordering him to pay forty-five percent of Bahma–Ebertz's attorney's fees. He argues that the court "fail[ed] to take into account the fact that both of the parties [were] fully capable of financially sustaining their own attorney's fees." Citing *Fernau v. Rowdon*, a child custody case in which we affirmed an award of attorney's fees to a spouse we described as having only "poverty level job prospects,"[31] Ebertz claims that fees should be awarded only when the "poorer spouse lacks the resources to hire an attorney."[32] Because Bahma–Ebertz "is far from 'poverty level' in either her current employment or her 'job prospects,'" Ebertz reasons, an award of fees was unjustified here.

But *Fernau* did not hold that fees can be awarded only to disadvantaged spouses who have "poverty level job prospects"; it merely affirmed a decision that awarded fees under those circumstances. Nor have we adopted a rule like the one Ebertz proposes. To the contrary, we have consistently recognized that parties should generally bear their own fees and costs when their "economic

situations and earning capacities are comparable" but that, "[o]therwise, awards of attorney's fees are committed to the trial court's discretion."[33]

Here, the superior court recognized that the parties' economic situations were nominally comparable: Bahma–Ebertz earned $46,800 per year while Ebertz earned approximately $49,000 per year. Yet the court noted that, the relatively higher cost of living in Bethel undermined this nominal equality, placing Bahma–Ebertz at a disadvantage. The court also noted that Ebertz would soon be eligible to retire from the military, which would give him the ability to receive a pension and earn a second income in the private sector. Moreover, the court noted that its order dividing the parties' property favored Ebertz, awarding him fifty-eight percent of the marital property, including a duplex that generated regular rental income. Ebertz had also inherited funds that were available to pay his litigation costs.

Given the totality of these circumstances, the superior court found a sufficient disparity in the parties' economic circumstances to warrant a partial award of fees to Bahma–Ebertz. Because the court's findings concerning these circumstances are substantially supported by the record, its fee award cannot be characterized as arbitrary, capricious, or manifestly unreasonable. Accordingly, we hold that the award fell within the scope of the superior court's broad discretion.

## IV. CONCLUSION

For these reasons, we AFFIRM the superior court's decision.

---

**31.** 42 P.3d 1047, 1060 (Alaska 2002).

**32.** Ebertz also cites *Carlson v. Carlson*, 722 P.2d 222, 225 (Alaska 1986), and *Bussell v. Bussell*, 623 P.2d 1221, 1223 (Alaska 1981), for this proposition. But neither case is on point.

**33.** *Schmitz v. Schmitz*, 88 P.3d 1116, 1130 (Alaska 2004).