NOTICE

*Memorandum decisions of this court do not create legal precedent. See Alaska Appellate Rule 214(d). Accordingly, this memorandum decision may not be cited for any proposition of law or as an example of the proper resolution of any issue.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TERRENCE SHANIGAN, | ) | |
| | ) | Supreme Court No. S-14615 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-11-05578 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| ELISSA SHANIGAN, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1451 – February 27, 2013 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Peter A. Michalski, Judge.

Appearances: Robert C. Erwin and Roberta C. Erwin, Palmier-Erwin, LLC, Anchorage, for Appellant. Elissa A. Przywojski, pro se, Anchorage, Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, and Maassen, Justices. [Carpeneti, Justice, not participating.]

## I. INTRODUCTION

On this appeal from a final decree of custody and divorce, a father challenges the superior court's decision to award legal custody of two children to the mother. Finding neither clear error nor an abuse of discretion, we affirm.

---

\* Entered pursuant to Appellate Rule 214.

## II.    FACTS AND PROCEEDINGS

Terrence Shanigan and Elissa Przywojski (formerly Elissa Shanigan) married in 2004.  Their two children were born in 2008 and 2010.  The couple separated in February 2011, and Terrence filed for divorce, requesting joint custody of the children.

In August 2011, while the divorce action was pending, Terrence sought a protective order, alleging that Elissa had engaged in domestic violence.  After the court denied a short-term order Terrence withdrew his request for a long-term order, explaining that he and Elissa had agreed to a mutual no-contact order instead.

A custody trial took place in September 2011.  In the final decree of divorce and custody, Superior Court Judge Peter A. Michalski granted the divorce and awarded Elissa primary physical and sole legal custody of the two children.  The order provided that although Elissa had "a duty to confer and consult with Terrence about serious issues affecting the children as they arise, . . . if they cannot agree, she will make the final decision."

Terrence appeals.

## III.    STANDARD OF REVIEW

"The superior court has 'broad discretion to determine custody awards so long as the determination is in the child's best interests.' "[1]  We will not reverse custody determinations unless the superior court abused its discretion or made controlling factual findings that were clearly erroneous.[2]  Abuse of discretion exists when the superior court "considers improper factors . . . , fails to consider statutorily mandated factors, or assigns

---

[1]    *Weinberger v. Weinmeister*, 268 P.3d 305, 308 (Alaska 2012) (quoting *Misyura v. Misyura*, 242 P.3d 1037, 1039 (Alaska 2010)).

[2]    *Id.* (quoting *Misyura*, 242 P.3d at 1039).

disproportionate weight to particular factors while ignoring others."[3]  The superior court's factual findings are clearly erroneous if a review of the record leaves us with "a definite and firm conviction . . . that a mistake has been made."[4]  We give the superior court "particular deference" for findings that are based primarily on oral testimony: "the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[5]

Whether the superior court applied the correct legal standard poses a question of law that we review de novo.[6]

## IV.  DISCUSSION

### A.  The Superior Court Did Not Abuse Its Discretion In Awarding Elissa Legal Custody.

Terrence argues that the superior court abused its discretion in awarding sole legal custody of the children to Elissa.  He claims that the court overlooked the preference for joint legal custody, conflated the concepts of physical and legal custody, and improperly ignored trial testimony.  We find no abuse of discretion.

#### 1.  The superior court did not ignore the preference for joint legal custody.

We have recognized a legislative preference for joint legal custody, which gives both parents "the opportunity to guide and nurture their child . . . on an equal

---

[3]     *Id.* (quoting *Misyura*, 242 P.3d at 1039).

[4]     *Id.* (quoting *Misyura*, 242 P.3d at 1039) (internal quotation marks omitted).

[5]     *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005) (quoting *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001)) (internal quotation marks omitted).

[6]     *Id.* (citing *Moeller-Prokosch v. Prokosch*, 27 P.3d 314, 316 (Alaska 2001)).

footing," even when joint physical custody is not practical.[7] "Joint legal custody means that both parents 'share responsibility in the making of major decisions affecting the child's welfare.' "[8] Joint legal custody is thus "only appropriate when the parents can cooperate and communicate in the child's best interest";[9] it is unlikely to work if the parents are "incapable of meaningful communication."[10]

The superior court's decision not to award joint legal custody stemmed in part from its findings that the parents had difficulty communicating and that Terrence had controlling tendencies. Elissa and Terrence both testified to communication problems. Elissa said that their frequent disagreements were difficult for their daughter and that the children responded to their fights by screaming and crying. Elissa was afraid that joint legal custody would give Terrence the "opportunity to . . . jerk [her] around." Terrence testified about his tense interactions with Elissa and their disagreements on issues involving the children.

As for controlling tendencies, Elissa testified that when she stayed home Terrence would "check on me several times a day," and when she worked "he would show up on almost a daily basis." He would sometimes park outside her gym and watch her work out. She testified that he required her to carry her cell phone at all times, and that "[h]e would text me constantly. If I didn't text back, he would start calling my cell

---

[7]    *Bell v. Bell*, 794 P.2d 97, 99 (Alaska 1990) (quoting *An Act Relating to Child Custody*, ch. 88 § 1(a), SLA 1982) (internal quotation marks omitted).

[8]    *Jaymot v. Skillings-Donat,* 216 P.3d 534, 540 (Alaska 2009) (quoting *Farrell v. Farrell,* 819 P.2d 896, 899 (Alaska 1991)).

[9]    *Id.* (quoting *Farrell*, 819 P.2d at 899 (internal quotation marks omitted)); *see also* AS 25.20.060 (c) (providing that joint custody is appropriate if it "is determined by the court to be in the best interests of the child").

[10]    *Bell*, 794 P.2d at 99 (internal quotation marks omitted).

phone and . . . it got to a point where he would even call my parents' house." According to Elissa, Terrence tried to control many aspects of her life, from her relationship with her family to her choices of clothing and perfume. Her mother testified that Terrence asked for her help in "convinc[ing Elissa] she needed to behave the way he wanted her to behave." The superior court, having heard this testimony, could reasonably conclude that controlling tendencies on Terrence's part could make it difficult for the parties to cooperate and communicate in the children's best interests.

In its final order, the superior court made a commendable effort to balance the involvement of the two parents by giving Elissa a duty to consult with Terrence on serious issues involving the children notwithstanding her final say in how those issues would be resolved. We see no abuse of discretion in the award of sole legal custody to Elissa.

### 2. The superior court did not conflate legal and physical custody.

We also find no support for Terrence's claim that the superior court conflated the concepts of physical and legal custody. We have held that physical and legal custody are two distinct elements that "must be analyzed separately."[11] In its conclusions of law, the superior court awarded Elissa sole legal custody "[d]ue to the primacy factor, the parties' difficulties communicating, and Terrence's controlling tendencies." The court addressed physical custody in a separate paragraph, stating that it was in the children's best interests to award primary physical custody to Elissa because of "[t]he youth of these two children and the geographic distance between the parties." The record clearly shows that the superior court did not erroneously conflate the two elements.

---

[11] *Collier v. Harris*, 261 P.3d 397, 403 (Alaska 2011).

### 3. The superior court did not improperly ignore trial testimony.

Terrence argues that the superior court, in awarding sole legal custody to Elissa, ignored trial testimony establishing that he also provided a substantial amount of care to the children. Terrence asserts that he was a "regular care giver of the children" and the "primary attachment figure," and several witnesses testified at trial about his positive interactions with the children and the time he spent caring for them. The superior court expressly acknowledged that "[e]ach parent is a good one to two bright children. Each loves the children and the children are bonded with each of them." The court also found, however, as described above, that joint legal custody was not in the children's best interests. These findings are not necessarily in conflict; we find no abuse of discretion in the trial court's decision that the parents' difficulties with each other made joint legal custody unworkable despite the fact that both had good relationships with the children.

To the extent Terrence's appeal includes an implicit challenge to the court's finding that Elissa was the primary caregiver, we see no clear error, as Elissa's testimony supports the finding. She testified extensively about her day-to-day care of the children, the relative amounts of time that the two parents devoted to child care, and their respective roles in making decisions about the children's welfare. While Terrence attacks some of this testimony as "unsupported," "it is not our job to reweigh the evidence. We merely determine whether the trial court's finding is supported by the

record."[12]  We give particular deference to the superior court's determinations of credibility,[13] and we find no reason to question them here.

### B. The Superior Court Properly Addressed Terrence's Domestic Violence Claims.

We have held that "where a superior court finds that domestic violence occurred, it must make express findings regarding whether the incident or incidents of domestic violence constitute a 'history of perpetrating domestic violence' under AS 25.24.150(h)" so as to trigger a rebuttable presumption against an award of sole or joint custody to the abusive parent.[14]  The superior court in this case found no "domestic violence to the level contemplated by the statute,"[15] a finding Terrence contends is contrary to the evidence.  Again, however, there is nothing in the record that persuades us that the superior court's factual finding was clearly erroneous.

The evidence in support of Terrence's domestic violence claims was conflicting and inconclusive.  In a February 2011 affidavit, Terrence swore that there had never been violence in the marriage.  Six months later he requested a protective order, alleging that Elissa had been violent and threatening since January.  After a court denied his short-term order, Terrence asked that the matter be dismissed, noting that he and Elissa had agreed to a mutual no-contact order.  He testified at trial that the basis for his domestic violence petition was that Elissa had threatened  to "come and take the kids"

---

[12]     *Lone Wolf v. Lone Wolf*, 741 P.2d 1187, 1190 (Alaska 1987) (quoting *Brooks v. Brooks*, 733 P.2d 1044, 1051 (Alaska 1987)) (internal quotation marks omitted).

[13]     *Ebertz v. Ebertz,* 113 P.3d 643, 646 (Alaska 2005) (quoting *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001)).

[14]     *Williams v. Barbee,* 243 P.3d 995, 1004 (Alaska 2010).

[15]     *See* AS 25.24.150(c)(7), AS 25.24.150(h).

if he did not comply with certain demands. He also presented the testimony of the children's babysitter, who saw empty beer bottles by the bed and peremptory notes from Elissa to Terrence about household chores. Finally, Terrence cites his own testimony that Elissa was sometimes threatening, angry, and depressed, testimony which Elissa largely disputed.

Again, it is not our task on appeal to reweigh the evidence[16] or to second-guess the trial court's determinations of credibility.[17] To the extent there was conflicting testimony about the details of Elissa's and Terrence's relationship, it was up to the superior court to determine which version was more credible. We are not persuaded that the superior court clearly erred in finding that there was no persuasive evidence of conduct in the parties' marriage that rose to the level of domestic violence.[18]

## C. The Superior Court Did Not Rely On The Tender Years Doctrine.

Finally, Terrence claims that "[t]he only logical explanation for the [superior court's] findings" is the improper application of the tender years doctrine. The tender years doctrine provides that, where all else is equal, there is a preference for awarding custody of young children to the mother.[19] We have held that the doctrine is

---

[16] *Lone Wolf*, 741 P.2d at 1190 (quoting *Brooks*, 733 P.2d at 1051) (internal quotation marks omitted).

[17] *Ebertz*, 113 P.3d at 651.

[18] In his reply brief, Terrence claims that the superior court found him to be the perpetrator of domestic violence. To the contrary, the court found no evidence of domestic violence by either party.

[19] *Wetzler v. Wetzler*, 570 P.2d 741, 742 (Alaska 1977) (citing *Johnson v. Johnson*, 564 P.2d 71 (Alaska 1977); *King v. King*, 477 P.2d 356, 357 (Alaska 1970); *Sheridan v. Sheridan*, 466 P.2d 821, 824 (Alaska 1970); *Harding v. Harding*, 377 P.2d 378, 379 (Alaska 1962)).

inappropriate in determining the best interests of the child.[20]  We do not find that the superior court applied the doctrine here.

The record shows that the superior court referred to Elissa's gender and the children's ages in the context of its assessment of the children's best interests.  The court commented on Elissa's role as "the mom" only in explaining its finding that, as the children's primary caregiver in the past, she had "an edge" with regard to the stability factor.  The court referred to the children's ages to assess their needs and preferences, observing that they had the same needs as all "young kids" and that they were too young to have a custodial preference.  Its discussion accords with the best interests analysis and does not appear to be an application of the tender years doctrine.

## V.    CONCLUSION

We AFFIRM the superior court's judgment.

---

[20]    *Johnson*, 564 P.2d at 75.