NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JAMES W. DOBSON, | ) | |
| | ) | Supreme Court No. S-15388 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-11-09818 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| TONI L. DOBSON, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1513- August 6, 2014 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Patrick J. McKay, Judge.

Appearances: James W. Dobson, pro se, Eagle River, Appellant. Toni L. Dobson, pro se, Chugiak, Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

I.      INTRODUCTION

Following a hearing on the parties' motions to modify a prior agreement concerning custody of their five minor children, the superior court awarded sole legal and primary physical custody to the mother. The father appeals, challenging the superior court's findings of fact and its best interests determination. We affirm the superior court's decision.

---

\*      Entered under Appellate Rule 214.

## II.  FACTS AND PROCEEDINGS

James and Toni Dobson divorced in 2011.  They negotiated a court-approved custody agreement providing for joint legal custody and giving Toni primary physical custody of their five minor children.  In July 2012 James retired from the military.  He sought a modification of custody to require the children to live with each parent for six months of the year.  The superior court denied the motion without a hearing, finding that James's voluntary retirement was not a substantial change in circumstances.

In March 2013, Toni moved for sole legal and primary physical custody of the parties' daughter, citing the poor relationship between the girl and her father.  Toni also filed a petition for a domestic violence protective order, alleging that James had become enraged after she moved to modify custody.  The court denied Toni's petition for a protective order, but it did issue an interim order requiring that James's visits with his daughter be supervised.

In April 2013 James moved for primary custody of all five children.  In July 2013 Toni filed another modification motion, in which she sought sole legal custody of all five children.  The superior court appointed a custody investigator, who recommended joint legal and physical custody.  The court held a modification hearing in October 2013 and, after hearing the evidence, found that there had been a substantial change in circumstances because of James's permanent move to Florida and the parties' increased difficulty in communicating with each other.  The court found that the children had been living in a "stable[,] appropriate environment" in Alaska with Toni and that it was "not in the children's best interests to disturb that stability."  The court therefore modified custody, continuing Toni's primary physical custody of the children and granting her sole legal custody as well.  James was granted visitation for eight weeks each summer and alternating winter and spring breaks, along with reasonable visitation on 15 days

notice if he visits Alaska during the school year. There was no further requirement that his visits with his daughter be supervised, but he was required to undergo 20 hours of counseling in "a co-parenting program" before the court would revisit the issues of legal and physical custody.

James filed this appeal.

## III. STANDARDS OF REVIEW

"Trial courts have broad discretion in determining whether a proposed child-custody modification is in the child's best interests."[1] We will "set aside the superior court's best interests determination only if the trial court abused its discretion or if the fact findings on which the determination is based are clearly erroneous."[2] It is an abuse of discretion to assign "disproportionate weight to particular factors while ignoring others."[3] A finding of fact "is clearly erroneous if, based on a review of the entire record, the finding leaves us with a definite and firm conviction that a mistake has been made."[4] "We give particular deference to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[5]

---

[1] *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011) (citing *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005)).

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *Id.* (quoting *Ebertz*, 113 P.3d at 646) (internal quotation marks omitted).

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion When It Granted Sole Legal Custody To Toni.

James argues that the superior court should have followed the recommendation of the custody investigator that the parents have joint legal custody. But "custody investigators are simply expert witnesses and . . . their recommendations should be evaluated on a case-by-case basis, in the same manner as testimony presented by other witnesses."[6] "[T]he critical question . . . is not whether the superior court erred in rejecting the custody investigator's proposed decision, but whether the evidence as a whole supports the court's decision."[7]

Here, the custody investigator noted that "Mother and Father do not communicate with each other well. It appears when they do communicate each of them will use any information acquired against [the] other[,] and each parent is cautious when communicating." The investigator nonetheless recommended joint legal custody because "Father has shown that he can work with Mother on legal issues and they both need to have input in these areas." The superior court weighed the evidence differently, granting Toni sole legal custody "[b]ecause of the distance involved and the poor communications between the parties." We have recognized "that cooperation between parents is essential if the [joint custody] arrangement is to be in the best interests of the child."[8] We see no abuse of discretion in the superior court's determination that the best way to address the

---

[6] *William P. v. Taunya P.*, 258 P.3d 812, 816 (Alaska 2011) (quoting *Ebertz*, 113 P.3d at 647).

[7] *Id.* (quoting *Ebertz*, 113 P.3d at 647-48) (omission in original).

[8] *McClain v. McClain*, 716 P.2d 381, 386 (Alaska 1986); *see also Dragseth v. Dragseth*, 210 P.3d 1206, 1209 n.10 (Alaska 2009); *Julsen v. Julsen*, 741 P.2d 642, 649 (Alaska 1987).

parties' communication difficulties, while looking out for the children's best interests, was by a grant of sole legal custody to one parent.

**B.**   **The Superior Court Did Not Clearly Err In Its Findings Of Fact Regarding the Children's Best Interests.**

James points to a number of the court's findings of fact that he claims are contradicted by the custody investigator's report. But as noted above, the superior court was under no obligation to accept the investigator's findings; all that matters is that the court's own findings had substantial support in the record. Besides, many of the findings James challenges do not actually contradict the investigator's report.

James argues that the court's finding that "the children do not have special needs" conflicts with the investigator's finding that one of the children "displays some signs of trauma." But the investigator's reference to trauma, the source of which was "not clear," is in her summary of information received from a counselor. The investigator's own conclusion was that "[n]one of the children appear to have any medical or developmental issues," that both parents were able to meet "the physical, emotional, and mental needs of the [four] boys," and that the mother had less difficulty meeting the needs of the daughter because of the "estranged relationship" between father and daughter. The court's finding that "[b]oth parties appear capable and desirous of meeting the children's needs" is not clearly erroneous.

James next faults the superior court for finding that only Toni supported the children in counseling, which he contends conflicts with the investigator's report of a counselor's statement that "father [is] supportive of counseling." But the investigator also relayed Toni's report that James "was not supportive of counseling for [the daughter] and stopped the process for a period of time." What the court actually found, in its oral remarks following trial, was that "the children are in counseling, supported primarily by Mother in part due to the geographical distance of Father." In its subsequent written

*1513*

findings, the court acknowledged that "[t]he children are in counseling supported by both parents." James does not demonstrate that either of these statements is clearly erroneous.

James also asserts that the superior court improperly found that his follow-through with the counselor was less than consistent, a finding James again asserts is contradicted by the custody investigator's report. But the court's finding has support in the evidence. The therapist working with the Dobsons' daughter noted that for James's relationship with her "to repair, frequent family counseling with her father would need to take place," but such counseling was difficult because of James's residence out of state. The therapist also reported that although both parents were "cooperative with the process, . . . there was no additional contact from" James. In light of this evidence, there is no clear error in the court's finding regarding James's inconsistency with counseling.

James argues that the superior court erred by understating the amount of inappropriate information Toni communicated to the children about the divorce. But the court was presented with evidence that James, too, shared inappropriate information with the children (particularly in the form of disparaging remarks about their mother and her new partner), and the court therefore instructed both parties to do a better job of keeping their disputes from the children. We see no clear error in the court's finding of fact and no abuse of discretion in its reasonable direction to the parties.

According to James, the superior court also erred by finding that the communication problems between the parties were all James's fault. But James misinterprets the court's findings. Again, although the court did observe on the record that it was more impressed with Toni's communicativeness than with James's, the court's written findings stated that there were "poor communications between the parties" and not that the problem was caused by one or the other. The court did rely partly on these communication issues when it granted sole legal custody to Toni, but James does not dispute that the issues exist. Again, we see no clear error.

James also challenges the superior court's finding that there was "no evidence of recent, relevant domestic violence." Any domestic violence, not just "recent" domestic violence, is relevant and must be considered in a custody determination.[9] And under AS 25.24.150(g), "[t]here is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent . . . may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child." Where the court finds that domestic violence has occurred, "it is plain error for the court not to make findings as to whether the domestic violence amounted to a history of perpetrating domestic violence."[10]

Here, the only evidence of any domestic violence which would favor James's position appears in the "parenting concerns" he shared with the custody investigator, where he alleged that Toni hit him during arguments and threw water on him. Toni admitted to the investigator that she threw a coffee cup *near* James during the first six months of their marriage and once threw water on him when he "smashed her phone and choked her." But the custody investigator ultimately found "no evidence of domestic violence, child abuse, or neglect in either of the proposed custodial households" and that there was "no other evidence" to support James's allegation that Toni hit him. James did not testify about domestic violence at the hearing.

In any event, James's argument is not that the court overlooked evidence of domestic violence, but rather that an alleged inconsistency in Toni's reports should have caused the court to question her credibility. According to James, Toni denied that there had been any instances of domestic violence when she filed her petition for a domestic

---

[9]     AS 25.24.150(c)(7) (Rhe superior court "shall consider . . . any evidence of domestic violence . . . in the proposed custodial household or a history of violence between the parents.").

[10]     *Puddicombe v. Dreka*, 167 P.3d 73, 77 (Alaska 2007).

violence protective order, whereas she told the investigator about the incidents noted above.  But even if these statements were inconsistent, it was for the superior court to decide what effect the inconsistency had on Toni's credibility.  We give "particular deference to the trial court's factual findings . . . because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[11]  Again, we see no clear error.[12]

Finally, James asserts error in the superior court's failure to address other concerns of his in the written findings of fact and conclusions of law:  that Toni failed to file her witness list on time and that the written findings and conclusions were signed nine months after James filed his motion to modify custody (one month after the evidentiary hearing).  James does not explain how the judge's failure to mention these issues could have prejudiced him or affected the result.[13]  The superior court's findings were well founded in the evidence and sufficient to support its award of custody.

## V.    CONCLUSION

We AFFIRM the superior court's grant of sole legal and primary physical custody to Toni.

---

[11]     *Misyura v. Misyura*, 242 P.3d 1037, 1039 (Alaska 2010) (quoting *Ebertz v. Ebertz*, 113 P.3d at 646) (internal quotation marks omitted).

[12]     As other attacks on Toni's credibility, James makes a cursory reference to her "perjury in court" and her "theft of medical records," citing unsuccessful motions for contempt he had filed earlier in the proceedings.  Again, we defer to the superior court's assessment of the parties' credibility.

[13]     Because James is proceeding without an attorney, we address an argument he may have intended but does not make:  that he was prejudiced by Toni's late filing of her witness list.  But Toni's witness list identified only herself and "individuals listed by the defendant."  As it happened, only Toni, James, and an authentication witness called by James testified.  We do not see how James could have been prejudiced by Toni's late filing.