NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ADRIANNE C., | ) | |
| | ) | Supreme Court No. S-17730 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-15-10768 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| CHRISTOPHER D., | ) | AND JUDGMENT[*] |
| | ) | |
| Appellee. | ) | No. 1809 – January 13, 2021 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Josie Garton, Judge.

Appearances: D. Scott Dattan, Law Office of Dattan Scott Dattan, Anchorage, for Appellant. Molly R. Gallagher and Jacob A. Sonneborn, Law Office of Jacob Sonneborn, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

## I.   INTRODUCTION

A mother and father separated before their son's birth. They later agreed in writing to share physical custody by alternating weeks. The father moved to modify custody, arguing that a substantial change of circumstances had occurred due to domestic violence between the mother and her boyfriend and that the mother violated the custody agreement by leaving the son in the boyfriend's care without supervision, despite his past

---

[*]     Entered under Alaska Appellate Rule 214.

conviction for a violent crime. The superior court modified custody by granting primary physical custody to the father. We affirm.

## II.    FACTS AND PROCEDURAL HISTORY

Adrianne C. and Christopher D. contest the custody of their son, Alex, born in 2015.[1] Adrianne also has an older son, Adam, who is Alex's half-brother. Christopher and Adrianne separated before Alex was born. In 2017 they agreed in writing to share custody of Alex by alternating weeks during the school year and alternating two-week periods in the summer. The custody agreement also contained a specific provision that he would not be left unsupervised in the presence of anyone with a criminal record for child abuse or violence. The superior court issued a decree of custody in which it incorporated the custody agreement as an order of the court.

In April 2019 Adrianne petitioned for and obtained a domestic violence protection order against her ex-boyfriend Robert M. Robert had previously been convicted of at least one violent crime. In May 2019 Christopher filed a motion to modify custody. The motion centered around Adrianne's relationship with Robert.

Specifically, Christopher alleged that, despite Robert's record of violent crime, Adrianne on multiple occasions left Alex in Robert's sole care and that at least once Robert neglected Alex by letting him run loose in a mall and a department store. Christopher stated that Adrianne's petition for a restraining order, which does not appear in the record, asserted that Robert lived in Adrianne's home, "threatened her, punched holes in her walls, and was stalking her." Christopher concluded by stating that this domestic violence in Adrianne's home, as well as her decision to allow Robert to care

---

[1] We use initials in lieu of the parties' last names to protect the family's privacy. We use pseudonyms for the children for the same reason.

for Alex without supervision, constituted a substantial change in circumstances, and he requested a hearing for primary physical and sole legal custody.

The superior court held a hearing spanning two days in November and December of 2019. At the hearing, witnesses discussed an incident when Adrianne had left her children with a babysitter; upon her return, Adam was upset. The superior court noted that whatever actually occurred to upset Adam was not significant but that Adrianne's passive response to the incident, both at the time and at the hearing, was not particularly protective.

In another incident, Adrianne called the police after Adam told her he was with his father's girlfriend. In oral findings, the superior court found that Adrianne's communication with Adam surrounding this incident was parent-centered, not child-centered, and although Alex was not involved in this incident, it again cast doubt on her ability to meet Alex's emotional needs.

Adrianne testified that, a few months before the end of her relationship with Robert, he threatened to hit her and that while she was not at home he punched holes in her wall. Adrianne testified that after she found out about Robert's prior conviction for a violent crime, he explained it was not his fault, and she felt that explanation was adequate. When asked why she let Robert keep a gun in her house given this behavior, she did not answer. She confirmed she did sometimes leave Alex in Robert's care.

Adrianne affirmed that she broke up with Robert and that he was then out of her life. But she testified that in the six weeks prior to her pursuing the protective order, Robert would show up at her house late at night, banging on her door and screaming at her; this occurred three to four times when Alex was present, scaring him.

The superior court found that Alex had been "exposed to at least one act of domestic violence" between Adrianne and Robert. In its oral findings, the superior court elaborated that its finding of a "substantial change in circumstances" was based on Alex

being left unsupervised with a person convicted of a violent crime, as well as the domestic violence that occurred in Adrianne's household.

The superior court concluded that Alex was unsafe in Robert's care, based on witness testimony that Robert left three-year-old Alex and seven-year-old Adam unattended at a mall and department store. The court further noted that, although Adrianne was "fuzzy" in testifying about when she knew of Robert's history of violence, it was clear that she left Alex in his care after she knew about his history and after he had committed violence in her home. The superior court acknowledged that obtaining the restraining order was "protective" and that Robert no longer posed a threat. But the court also concluded that Adrianne's testimony suggested the quality of her decision-making had not changed from when Robert was still in the home.

The superior court noted in its order that it considered the statutory best-interests factors and specifically stated that the factor concerning the capability and desire of each parent to meet the child's needs weighed in Christopher's favor because he provided "a more stable, routine, and safe experience" for Alex. The court pointed out that Christopher primarily took Alex to his medical appointments and noted that Christopher wanted to encourage a relationship between Alex and Adam. In contrast, the court found that Adrianne's capacity and desire to provide for Alex's needs, particularly his safety, was "questionable" due to her decisions such as leaving Alex in Robert's care despite knowing he "was not an appropriate caregiver."

The court noted that the stability factor weighed in Christopher's favor, despite the fact that modifying custody would be disruptive to Alex, because Adrianne had not consistently provided Alex stability. The court noted that neither parent demonstrated a willingness or ability to facilitate a relationship with the other parent due to their acrimonious relationship. Finally, the court observed that Christopher's home

had been free of domestic violence while Adrianne's had not, which weighed in Christopher's favor.

The court granted Christopher primary physical custody of Alex but granted Adrianne significant parenting time, including two out of every three weekends and one evening a week during the school year, and every other week during the summer. Adrianne filed a motion for reconsideration, arguing in large part that the court's safety concerns were merely "speculative." Her motion was denied, and Adrianne appealed.

## III. DISCUSSION

Alaska Statute 25.20.110(a) permits a superior court to modify a custody arrangement "if the court determines that a change in circumstances requires the modification . . . and the modification is in the best interest of the child." The parent seeking modification must first make a prima facie showing of a substantial change in circumstances.[2] Once such a showing has been made, the superior court must schedule an evidentiary hearing "to consider whether, in light of such changed circumstances, it is in the child's best interest to alter the existing custodial arrangement."[3] At this hearing, the parent seeking modification bears the burden of proving both that circumstances have changed and "that the changed circumstances, considered in conjunction with other relevant facts bearing upon the child's best interests, warrant modification of the existing custody decree."[4]

---

[2]     *Abby D. v. Sue Y.*, 378 P.3d 388, 394 (Alaska 2016) (citing *Hunter v. Conwell*, 276 P.3d 413, 419 (Alaska 2012)).

[3]     *Geldermann v. Geldermann*, 428 P.3d 477, 482 (Alaska 2018) (quoting *Lashbrook v. Lashbrook*, 957 P.2d 326, 329 (Alaska 1998)).

[4]     *Lashbrook*, 957 P.2d at 329 (Alaska 1998) (quoting *A.H. v. W.P.*, 896 P.2d 240, 244 (Alaska 1995)).

We recognize the superior court has "broad discretion in determining whether a proposed child-custody modification is in the child's best interests."[5] This discretion extends to the superior court's determination, following an evidentiary hearing, that "a substantial change in circumstances" exists.[6] We reverse these determinations by a superior court only if it "abused its discretion or if the fact findings on which the determination is based are clearly erroneous."[7] "Abuse of discretion is established if the [superior] court considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others."[8]

Here the superior court did not abuse its discretion by finding a substantial change in circumstances. Nor did the court abuse its discretion by finding that, in light of these changed circumstances, Alex's best interests were served by shifting primary physical custody to Christopher but leaving Adrianne with substantial parenting time. We therefore affirm the decision of the superior court.

### A. The Superior Court Did Not Abuse Its Discretion In Finding A Substantial Change In Circumstances.

To support a modification of child custody, the superior court must determine that "a change in circumstances" has occurred since the prior custody order

---

[5] *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011) (citing *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005)).

[6] *Collier v. Harris*, 377 P.3d 15, 20 (Alaska 2016) (citing *Heather W. v. Rudy R.*, 274 P.3d 478, 482 (Alaska 2012)).

[7] *Rego*, 259 P.3d at 452 (citing *Ebertz*, 113 P.3d at 646).

[8] *Collier,* 377 P.3d at 20 (quoting *Chesser-Witmer v. Chesser*, 117 P.3d 711, 715 (Alaska 2005)).

was entered.[9] When considering whether a party has crossed the threshold of showing "a substantial change in circumstances" to justify modifying custody, we look not for a single triggering event but to the "circumstances in the aggregate," and the superior court is within its discretion to do the same.[10] But the statute specifies one type of event that always constitutes a change of circumstances: "a finding that a crime involving domestic violence has occurred since the last custody or visitation determination is a finding of change of circumstances."[11]

The superior court based its determination that a substantial change in circumstances had occurred on two grounds, both involving Adrianne's ex-boyfriend Robert. First, the superior court found Adrianne left Alex unsupervised in the care of an individual with a violent crime conviction — a violation of the pre-existing custody agreement and order. Second, the superior court found Alex had been "exposed to at least one act of domestic violence" between Robert and Adrianne. Evidence presented at the hearing supported both grounds. Multiple witnesses, including Adrianne, testified that she had left Alex alone with Robert, who had been convicted of at least one violent crime. Adrianne testified that Robert punched a hole in her wall, threatened to hit her, and — after she broke up with him, including three or four times when Alex was present — stalked her by coming late at night to bang on her door and scream at her, scaring Alex.

Adrianne argues that the superior court inappropriately relied on the fact that she had filed for and received a domestic violence protective order against Robert. She argues the steps she took to remove a violent person from her home demonstrate her

---

[9]     AS 25.20.110(a).

[10]     *Heather W.,* 274 P.3d at 482.

[11]     AS 25.20.110(c).

commitment to the safety of her children and should not be used as the basis for removing the children from her care. She is right that a parent's act in securing a domestic violence protective order should never automatically lead to modification of child custody. But that is not what happened here.

The superior court agreed with Adrianne that obtaining a restraining order against Robert was a parentally protective act, reflecting positively on Adrianne's ability to meet Alex's needs. The superior court's finding that Alex had been exposed to an act of domestic violence did not hinge on the fact Adrianne obtained a protective order but rather on Adrianne's testimony at the modification hearing about Robert's actions, which had scared Alex. Moreover, the superior court's ultimate finding of a substantial change in circumstances relied not only on Alex's exposure to domestic violence — which is statutorily defined as a "change in circumstances"[12] — but also Adrianne's violation of the court's custody decree by leaving Alex alone with a person convicted of a violent crime. And even if the crime of domestic violence affecting the child had been the sole basis for finding a change in circumstances, the court would still need to consider whether, in light of these changed circumstances, modification would be in the child's best interests.[13]

Adrianne argues Christopher failed to establish at the evidentiary hearing that Robert stalking her "required" modifying the custody agreement. She emphasizes the wording of AS 25.20.110(a): "An award of custody of a child or visitation with the child may be modified if the court determines that a change in circumstances *requires*

---

[12] *Id*.

[13] *See Geldermann v. Geldermann*, 428 P.3d 477, 482 (Alaska 2018).

*the modification* of the award and the modification is in the best interests of the child."[14] But the superior court did not conclude — nor did it need to conclude — that the occurrence of domestic violence in Adrianne's household, standing alone, required modifying the custody agreement.

Instead, the superior court followed our precedent by considering whether "the changed circumstances, considered in conjunction with other relevant facts bearing upon the child's best interests, warrant[ed] modification of the [child's] custody."[15] In *Lee v. Cox*, when a superior court failed to even mention the central "changed circumstance" in question as a factor in its decision to modify custody, we remanded for factual findings on how the changed circumstance affected the child's best interests.[16] In contrast, the superior court here explicitly found both components of the substantial change in circumstances — Alex's exposure to domestic violence in Adrianne's household and Adrianne's decision to leave him in the care of a person convicted of a violent crime — negatively affected Alex's welfare and supported modifying the custody arrangement.

Therefore, the superior court did not abuse its discretion by finding a substantial change in circumstances that, when considered alongside other facts relevant to the child's best interests, justified modifying custody.

B.   **The Superior Court Did Not Err By Determining That It Would Be In The Child's Best Interest To Modify Custody.**

Once the superior court finds a substantial change in circumstances, it must consider whether a custody modification, in light of these changes, would be in the

---

[14]   AS 25.20.110(a) (emphasis added).

[15]   *Lee v. Cox*, 790 P.2d 1359, 1361 (Alaska 1990).

[16]   *Id.* at 1361-62.

child's best interests.[17] Alaska Statute 25.24.150(c) lays out nine factors for determining the child's best interests: (1) the child's needs; (2) the parent's capability to meet those needs; (3) the child's preference; (4) love; (5) stability and continuity; (6) willingness to foster the child's relationship with the other parent; (7) domestic violence; (8) substance abuse; and (9) any other pertinent factors. We will upset the superior court's weighing of these factors only if it abused its discretion or relied on facts which are clearly erroneous.[18]

The superior court explicitly considered all of the statutory factors. It found that Alex had needs typical of a child his age, and that several of the factors were "either neutral or not relevant" to determining custody here. The other factors all weighed in favor of granting custody to Christopher. Specifically, the court found that Christopher was "better able to provide for [Alex's] needs" and that, unlike Adrianne, he has "consistently provided stability to [Alex]" and maintained a home "free of domestic violence." In support of these findings, the superior court pointed to specific instances of conduct.

Adrianne does not dispute the facts of these incidents. She instead argues that it was improper for the court, when evaluating her ability to meet Alex's needs, to rely on the incidents involving her other son. When analyzing a child's best interests, "the court may consider only those facts that directly affect the well-being of the child."[19] And a parent's conduct with other people "is relevant only insofar as it has or can be

---

[17] *Geldermann*, 428 P.3d at 482.

[18] *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011) (citing *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005)).

[19] *Bruce H. v. Jennifer L.*, 407 P.3d 432, 438-39 (Alaska 2017) (quoting AS 25.24.150(d)).

expected to negatively affect the child."[20] But Adrianne's general approach to parenting can naturally be expected to directly affect Alex's well-being.

Adrianne further argues that the superior court's decision was impermissibly based on speculation. This argument is based largely on the court's use of the word "questionable" when it said "[Adrianne's] capacity and desire to provide for [Alex's] needs, particularly his safety, is questionable." But the superior court supported this conclusion with detailed oral findings, including that Adrianne had left Alex in the care of Robert who had proven himself a poor caregiver and had a violent history, that she had allowed Robert to store a gun in her home even after knowing about his prior conviction for a violent crime, and that she had made poor parenting decisions in other instances. Our requirement of "a nexus between the conduct of the parent relied upon by the court and the parent-child relationship"[21] is not a requirement that a child suffer actual physical harm from the parent's conduct before the court can consider that conduct when determining the child's best interests.

Adrianne also argues that the court failed to properly consider the effect of Christopher's work schedule on Alex's stability. But the court explicitly considered this, finding that even when he was away for work he provided a more stable environment by leaving Alex in the care of responsible adults. The court contrasted this stability with the instability of Adrianne leaving Alex in the care of Robert, who was irresponsible.

Finally, Adrianne argues that the court failed to consider the impact of a change in custody on Alex's relationship to his brother and his connection with his Alaska Native heritage through Adrianne's ties to her home village. But the court did

---

[20]   *Morel v. Morel*, 647 P.2d 605, 608 (Alaska 1982) (citing *Craig v. McBride*, 639 P.2d 303, 306 (Alaska 1982)).

[21]   *S.N.E. v. R.L.B.*, 699 P.2d 875, 878 (Alaska 1985).

consider these issues. The court specifically found "[Christopher] encourages a relationship and connection between [Alex] and his half-brother," and specifically provided Adrianne would be allowed to travel to her village with Alex to foster his connection with family there. In short, Adrianne's contentions that the superior court either failed to consider or improperly considered these factors lack merit.

The superior court did not abuse its discretion in determining that granting primary custody to Christopher is in Alex's best interests.

## IV.    CONCLUSION

We AFFIRM the superior court's decision.