Vivien R. DEININGER, Appellant,

v.

James W. DEININGER, Jr., Appellee.

No. S-4795.

Supreme Court of Alaska.

July 31, 1992.

Daniel L. Callahan, Schendel & Callahan, Fairbanks, for appellant.

Dennis E. Cook, Staley, DeLisio, Cook & Sherry, Inc., Fairbanks, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

MOORE, Justice.

James and Vivien Deininger were married in August 1977. They have three children: Jeremy, born April 21, 1979; Jenny, born March 31, 1982; and Johanna, born February 27, 1985.

In 1985, James and Vivien joined the Jehovah's Witnesses and raised their children in that religion. In 1990, James quit the church. That same year, James filed for a divorce from Vivien. Both parties sought interim custody of the children. After a hearing, the trial court awarded interim custody to Vivien and granted James visitation on alternating weekends and every Wednesday overnight. James and Vivien independently agreed to discontinue the Wednesday night visits when it became apparent that these overnights were difficult for Johanna, the parties' youngest daughter.

The court's child custody investigator filed a written custody evaluation in June 1991. She observed:

> This is a particularly sad case because it involves two very good parents who care deeply about their children. Their religious beliefs differ significantly and there is potential for this to cause a great deal of problems for the children. The differences in beliefs also translates into different lifestyles. The lifestyle the children have been raised with [for] most of their lives ... is very comfortable and a very solid foundation for them.

---

I do not believe that it will be beneficial for the children to have that foundation rocked at this point in their lives.

The investigator recommended awarding Vivien primary custody of the children during the school year subject to James' visitation on alternate weekends from Friday evening until Tuesday morning. She further recommended awarding James primary custody during the summer starting one week after school ends until two weeks before school begins with Vivien having visitation on alternate weekends.

At trial, James sought a 50/50 custody arrangement on an alternating week schedule.[1] James testified that the interim custody arrangement had interfered with his ability to stay actively involved with the children. He testified that a shared custody arrangement on an alternating week schedule would better allow him to maintain his involvement in the children's school projects and extracurricular activities. He also explained that the custody arrangement proposed by the child custody investigator was incompatible with his work schedule, since as a geologist, he often spent significant blocks of time doing field work during the summer. Vivien opposed this alternating schedule on the grounds that the children needed the continuity and stability which she could provide and urged the court to adopt the custody schedule recommended by the custody investigator.

The child custody investigator testified that James and Vivien were both loving and involved parents. She observed that they were able to set aside their differences and talk about the children and their needs. However, she noted that James' mother, who lived part-time with James at the time of trial, had repeatedly made disparaging comments to the children about their mother and her involvement with the Jehovah's Witnesses. Although she did not find that James had ever directly criticized Vivien or her religion in front of the children, the investigator testified that she believed that James did not accept Vivien's lifestyle and that the children were aware of his attitude. She further testified that the children needed and wanted to stay together. She recognized, however, that the children had different needs. Jeremy, the twelve-year-old, needed to spend more time with his father. Johanna, the six-year-old, had the most difficulties adjusting to her parents' divorce and needed more time with her mother. The custody investigator expressed particular concern over Johanna's ability to cope with joint custody at the time of the divorce. On cross-examination, she testified she could not predict if Johanna would be able to handle such a situation in the future. She concluded that an alternating week schedule would heighten lifestyle differences and make it more difficult for the children to adjust to their parents separation and divorce. However, she later conceded that exposure to both households could be positive if both parents accepted the other's lifestyle.

At the close of trial, Judge Steinkruger granted the parties joint legal custody. For the first two years following the divorce, she awarded Vivien primary physical custody and James visitation on alternating four-day weekends during the school year, and in alternating two-week blocks during the summer. Starting August 1993, the court ordered Vivien and James to share physical custody equally on an alternating week basis. The court observed:

It's my feeling that 50/50 split of the children is not appropriate at this stage because of the present needs of the children to adjust to their parent's separation and divorce and their need for stability and security based upon the kind of background that they've had and the testimony I've heard here. The lifestyle differences between the parents are fairly extreme, children need an adjustment period. Their father needs a period of time to create a neutral home so the kids don't feel that they have to be on one side or the other. We'll see by 1993 if that sort of plan can work out.

Judge Steinkruger ordered the parties to enter into mediation to help them make the transition to the shared physical custody arrangement in 1993. She also ordered

---

1. This alternating schedule was first proposed by Jeremy, the parties' oldest child.

counseling for Johanna and a custody workshop for James' mother. The court entered its written findings of fact and conclusions of law on September 24, 1991. This appeal followed.

█ This court will overturn a custody award only where the trial court has abused its discretion or if the controlling findings of fact are clearly erroneous. *See Julsen v. Julsen,* 741 P.2d 642, 648–49 (Alaska 1987). "An abuse of discretion may be found where the trial court considered improper factors, failed to consider statutorily-mandated factors, or improperly weighed certain factors in making its determination." *Id.* at 649.

█ Vivien argues that the trial court's custody award effects an automatic modification of custody in 1993 and therefore constitutes an abuse of discretion because this "modification" is not based on the statutorily mandated factors governing modification of custody. *See* AS 25.20.110; *Long v. Long,* 816 P.2d 145 (Alaska 1991) (a child custody award may be modified if the court determines that a change in circumstances requires the modification and the modification is in the best interests of the children involved).

We believe that it is a mischaracterization of the court's order to construe it as effecting an automatic modification of custody. Trial courts have broad discretion to fashion custody awards designed to meet the unique needs of the individuals involved. *Gratrix v. Gratrix,* 652 P.2d 76, 79 (Alaska 1982). In this case, the court found that it was in the children's best interests "to maintain stability, but to allow for gradual change." Consequently, the court ordered a two year adjustment period in which Vivien would have primary custody and James would have liberal visitation rights. The court emphasized that this arrangement would give the children time to adjust to moving between two households and that it would give James time to create a positive home environment. We believe that it is well within the trial court's discretion to order a 50/50 shared physical custody arrangement implemented over a two-year period.

We are impressed by Judge Steinkruger's thoughtful and sensitive approach to a difficult problem. She carefully balanced the disparate needs of each of the children to create an innovative custody award. The record demonstrates that both James and Vivien are excellent parents committed to their children's well-being. They have already demonstrated their ability to make joint decisions concerning the children despite their religious differences. On the record presented we affirm the court's ruling calling for shared physical custody implemented over a two-year period.

AFFIRMED.