Michael A. CHESSER, Appellant,

v.

Laurie K. CHESSER–WITMER, Appellee.

No. S–12158.

Supreme Court of Alaska.

March 21, 2008.

Michael A. Chesser, Evans Mills, New York, Appellant, pro se.

Margaret O'Toole Rogers, Foster & Rogers, LLC, Fairbanks, for Appellee.

1. *Chesser–Witmer v. Chesser,* 117 P.3d 711 (Alaska 2005).

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

The superior court modified a child custody order, granting physical custody to the mother during the school year in Fairbanks and to the father during summers and some holidays in Fort Drum, New York. This reversed the arrangement that the court had established one year before, under which the child spent the school year with her father in New York state. The father appeals the modification, arguing that the mother failed to prove a substantial change in circumstances, that the court's findings of fact were clearly erroneous, and that the court abused its discretion by failing to consider all statutory factors in determining the child's best interests. Because we conclude that the superior court did not err in its findings of fact and that it considered the relevant statutory factors, we affirm its ruling.

## II. FACTS AND PROCEEDINGS

We review for a second time the custody agreements of Laurie Chesser–Witmer and Michael Chesser, who married in 1997; had their only child, Bryanna, in Fairbanks in 1998; and divorced in 2001.[1] At the time of the parties' original custody agreement, both parents lived in Fairbanks and shared legal and physical custody. Laurie had physical custody of Bryanna approximately sixty percent of the time; Michael had physical custody approximately forty percent of the time. On January 23, 2004, Michael filed a motion to modify custody because he anticipated that his "employment with the United States Army [would] take [him] back to the Continental US." He recommended that Bryanna spend the school year with him wherever he would be stationed and that she spend summers with Laurie in Fairbanks. Laurie objected to Michael's proposed modification of the child custody arrangement.

Following a bench trial in May 2004, Superior Court Judge Richard D. Savell granted Michael's motion for one year and issued an order modifying custody. Judge Savell indicated that it was a "very difficult call" but found that Bryanna's interests were not served by Laurie's assisted living business, which she operated out of her home, and that Laurie had interfered with an "open, frequent, and loving relationship" with Michael.[2] Judge Savell ordered that Bryanna live with Michael and attend school in Fort Drum, New York, where Michael had been stationed. But Judge Savell made it clear that this modified custody arrangement was only to be in place for one year. Both parties were ordered to submit progress reports to the court a year later, on May 1, 2005, regarding "respective personal progress" and their "successes or failures [in] co-parenting [Bryanna]." Laurie appealed Judge Savell's order to this court; we affirmed the superior court's decision.[3]

During the one-year trial custody period, the parties litigated several aspects of their custody arrangement. Laurie sought court intervention to obtain both Christmas and spring break visitations, and Michael filed a "notice of intent" to request sanctions against Laurie for interfering in the emotional bonds between Bryanna and her stepmother, Angela Chesser. Laurie and Michael both filed motions to show cause, alleging mutual failures to share, among other things, school and health records.

In September 2004 Laurie sent a bouquet of birthday flowers and a teddy bear to Bryanna's school.[4] This provoked a "very upset" phone call from Michael, who indicated that "it was inappropriate for [Laurie] to send ... [the birthday gifts] to [Bryanna's] school," that she had "made [waves at] school and the principal was very, very upset with [Laurie] doing that." Laurie called the principal to "apologize for any inconvenience," which provoked Michael to chastise Laurie for "jumping rank" by responding directly to the principal.

On April 28, 2005, Michael filed a motion for permanent custody. Laurie opposed this motion, contending that "[t]he court's experiment has not worked out to the benefit of Bryanna as the court had hoped." She in turn filed a cross-motion seeking school-year custody. Both parties' pleadings contained numerous accusations of noncompliance with the court's orders, complaints of bad parenting, and claims of custodial interference. In August 2005 Superior Court Judge Robert B. Downes presided over a four-day trial on Bryanna's custody arrangement.[5]

At trial, Judge Downes heard testimony from Michael, Angela Chesser (Michael's wife and Bryanna's godmother), Eric Wharton (the court-appointed child custody investigator), Vanessa Jusczak (Michael's ex-girlfriend, who sought a restraining order against Michael in 2002 as a result of alleged domestic violence and extortion), Vanessa Korsgren (Laurie and Bill's next-door neighbor), Bill Witmer (Laurie's husband and Bryanna's stepfather), and Laurie Chesser–Witmer. The superior court entered an order modifying custody, granting Laurie school-year custody and Michael summer and holiday visitation. Michael appeals the modified custody order.

## III. DISCUSSION

### A. Standard of Review

 The trial court is "vested with broad discretion in child custody decisions,"[6] and its custody determination "will not be set aside unless the record shows that its controlling findings of fact are clearly erroneous or the court abused its discretion."[7] A finding of fact is clearly erroneous when "a re-

---

2. *Chesser–Witmer,* 117 P.3d at 715.

3. *Id.* at 720.

4. At the time, she did not know where Michael and Bryanna were living.

5. This case had been administratively transferred to Judge Downes prior to the May 1, 2005 review date.

6. *Evans v. Evans,* 869 P.2d 478, 479 (Alaska 1994).

7. *Borchgrevink v. Borchgrevink,* 941 P.2d 132, 134 (Alaska 1997).

view of the record leaves the court with a definite and firm conviction that the superior court has made a mistake." [8] We find an abuse of discretion in custody determinations when the trial court "fails to consider statutorily mandated factors, assigns too much weight to some of the factors, or considers improper factors." [9]

The parties dispute whether Judge Savell's May 2004 order was an interim custody order or a final custody determination.[10] Judge Downes found that the status of the case was "a continuation of the custody motion [filed in 2004].... There was a substantial change in circumstances when Mr. Chesser moved to New York[, and t]he question is ... what is the best interest of the child" under AS 25.24.150. Michael maintains that Judge Savell's order should be interpreted as a final order, which would only be modifiable if Laurie could prove a *new* change of circumstances.[11]

Because of the one-year limitation on the duration of the May 2004 order, it was logical for the superior court to characterize the August 2005 custody hearing as a continuation of the May 2004 hearing on the motion to modify custody. When we addressed the May 2004 order in *Chesser–Witmer v. Chesser*, we noted that "the change in custody

was ordered to be for 'one year duration and no more.'" [12] In deferring to the superior court's discretion to "fashion custody awards designed to meet the unique needs of the individuals involved," [13] we reasoned that "[g]iven that ... another modification hearing may be held at the superior court level, and given that there were no mistakes of law or fact during the modification hearing reviewed today, we decline to undo the current arrangement and interrupt a perhaps more gradual process." [14] Although Laurie may have been able to meet her burden to establish a change in circumstances based on a showing that Michael's actions "substantially interfere[d] with [her] visitation rights," [15] that showing was not necessary because the May 2004 order was an interim order. Judge Downes appropriately treated the August 2005 trial as a continuation of the May 2004 custody hearing.

## B. The Trial Court's Findings of Fact Regarding the Best Interests of the Child Were Not Clearly Erroneous.

Following a finding of a substantial change in circumstances, the superior court must consider nine statutory factors to determine the best interests of the child.[16] Judge

8. *Id.*

9. *J.L.P. v. V.L.A.*, 30 P.3d 590, 594 (Alaska 2001).

10. Generally, custody orders are considered final and permanent, although they are always subject to modification under AS 25.20.110(a). This is the practice because "finality and certainty in custody matters are critical to the child's emotional welfare." *Gratrix v. Gratrix*, 652 P.2d 76, 82–83 (Alaska 1982); *cf. Deivert v. Oseira*, 628 P.2d 575, 579 (Alaska 1981). While a temporary order may have been appropriate under the unusual circumstances of this case, such instances should be rare.

11. *See* AS 25.20.110(a).

12. 117 P.3d at 720.

13. *Deininger v. Deininger*, 835 P.2d 449, 451 (Alaska 1992).

14. *Chesser–Witmer*, 117 P.3d at 720.

15. We have previously found such a showing to be sufficient to constitute a change in circumstances. *See Kelly v. Joseph*, 46 P.3d 1014, 1017

(Alaska 2002); *Hermosillo v. Hermosillo*, 797 P.2d 1206, 1209 (Alaska 1990).

16. AS 25.24.150(c) outlines the nine factors a court must take into account when determining the best interests of a child:

(1) the physical, emotional, mental, religious, and social needs of the child;
(2) the capability and desire of each parent to meet these needs;
(3) the child's preference if the child is of sufficient age and capacity to form a preference;
(4) the love and affection existing between the child and each parent;
(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
(6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child ...;
(7) any evidence of domestic violence, child abuse, or child neglect ... or a history of violence between the parents;
(8) evidence that substance abuse by either parent or other members of the household

Downes made specific findings on five of the nine statutory factors. He found that Bryanna was not of a sufficient age to form a preference as to where she lived and that "Bryanna loves both [parents] and is loved by them in return." He made express stability findings and concluded that Laurie was "much more willing to encourage a close continuing relationship" between Bryanna and her father. He determined that the allegations of domestic violence presented by Vanessa Jusczak did not "rise[ ] to the level" of requiring him "to somehow restrict ... [Michael's] visitation custody in any way." He found that Michael was not credible in his accounts of some events and that "the claim that [Laurie] makes that [Michael is] manipulative and that [he] will do things to manipulate and control[ is] correct."

▮ Michael contests the trial court's findings of fact. He argues that the superior court's conclusions that he had a "manipulative control over [Laurie] and [over] wom[e]n in general" lacked support in the record. But the superior court's findings of fact were grounded in the evidence presented at trial. Specifically, the superior court's findings were supported by the testimony of Vanessa Jusczak, who accused Michael of threatening to publish compromising photographs of her, and by Laurie's testimony about Michael's abusive manner of communicating with her and its effect on her mental and physical health. The superior court had before it sufficient evidence from which to conclude that Michael had attempted to manipulate Laurie and that as a result, their "interpersonal relationship ... hurt[ ] the child." The court's findings of fact were supported by the record and were not clearly erroneous.

▮ Michael also suggests that the trial court improperly weighed Michael's employment with the United States Army against him because the risk of deployment or restationing made his home less stable.[17] Testimony at trial showed that Michael was deployable, and child custody investigator Wharton indicated that this counted in favor of Laurie because "[Bryanna] would not have to move so many times." Laurie responds that "the [s]uperior [c]ourt did not take [Michael's] deployable status into consideration when making its determination." Judge Downes never referred to Michael's potential deployment in his findings on the stability and continuity of Bryanna's custody. Thus, Michael's argument that the trial court relied on Michael's deployable status when making the stability determination is without merit.

**C. The Superior Court Did Not Abuse Its Discretion by Failing To Consider All of the Statutorily Mandated Factors.**

▮ Michael claims that the superior court erred by failing to consider all of the statutorily mandated factors. But the trial court need not make express findings on all statutory factors; instead, its findings "must either give us a clear indication of the factors which the superior court considered important in exercising its discretion or allow us to glean from the record what considerations were involved."[18] Judge Downes made lengthy oral findings which proceeded through the best interests factors delineated in the statute. Because Judge Downes's oral findings contemplated all relevant statutory factors and gave us a clear indication of the factors he considered important, his findings were sufficient.

directly affects the emotional or physical well-being of the child;

(9) other factors that the court considers pertinent.

17. We have held that a "continuity test centered entirely on the child's geographic stability would always favor placing the child with the non-moving parent." *Meier v. Cloud,* 34 P.3d 1274, 1279 (Alaska 2001). As a result, it is " 'impermissible' to treat the move itself (assuming it is a legitimate move) as a best-interests factor weigh-

ing against the moving parent." *Chesser–Witmer,* 117 P.3d at 719 (quoting *Moeller–Prokosch v. Prokosch,* 53 P.3d 152, 157 (Alaska 2002)).

18. *Smith v. Weekley,* 73 P.3d 1219, 1225 (Alaska 2003) ("In undertaking this 'best interests analysis,' the trial court need not 'specifically address the statutory factors detailed in AS 25.24.150(c), and make explicit "ultimate" findings that the best interests of the children require the custodial disposition reached.' ") (quoting *Borchgrevink,* 941 P.2d at 139–40).

Michael next contends that the court abused its discretion by failing to take into account the recommendation of the court-appointed child custody investigator, Eric Wharton, that Michael retain primary physical custody. But the trial court is not obligated to accept the recommendation or opinion of the child custody investigator.[19] "[C]ustody investigators are simply expert witnesses and ... their recommendations should be evaluated on a case-by-case basis, in the same manner as testimony presented by other witnesses."[20] Because custody investigators' recommendations are granted no particular deference, trial courts are free to reject those opinions provided that "the evidence as a whole supports the court's decision."[21] It was not an abuse of discretion to disregard Wharton's recommendations.

In a separate but related claim, Michael contends that the superior court erred by failing to take into account the recommendation of Bryanna's child psychologist, Dr. Steven Fitzgerald, who recommended that "Bryanna's best interests as a developing child would be served by her remaining in the physical custody of her natural father." But Dr. Fitzgerald was not called to testify, and his report was not introduced as evidence during the hearing; instead, his opinions were recorded in Wharton's custody investigation report. And regardless of its evidentiary status, just as the superior court was free to reject the recommendations of the child custody investigator, it could reject Dr. Fitzgerald's opinion.[22]

Judge Downes's findings and custody order were detailed and based on his careful consideration of the record and the testimony he heard at trial. His ruling, which was based on the statutory best interests factors, was not an abuse of discretion.

## IV. CONCLUSION

Because Michael has failed to demonstrate that the superior court abused its discretion, we AFFIRM Judge Downes's custody ruling in all respects.

---

**19.** *See Ebertz v. Ebertz,* 113 P.3d 643, 647 (Alaska 2005).

**20.** *Id.*

**21.** *Id.* at 648.

**22.** *See id.* at 647.