NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| WADE R., | ) | |
| | ) | Supreme Court No. S-15343 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-11-01809 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| MELINDA R., | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1521 – October 8, 2014 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Douglas Blankenship, Judge.

Appearances: Wade R., pro se, Fairbanks, Appellant. Melinda R., pro se, Fairbanks, Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

I.    INTRODUCTION

This appeal arises from a child custody modification. The father appeals the superior court's orders: (1) granting the mother shared legal custody and certain visitation rights; (2) setting the mother's child support obligation; and (3) allocating federal tax dependency exemptions. We affirm the court's custody and visitation order,

_____

\*    Entered under Alaska Appellate Rule 214.

but we remand for further proceedings regarding the child support and dependency exemption orders.

## II.    FACTS AND PROCEEDINGS

Wade and Melinda R.[1] married in 2006. They have two sons together, born in 2006 and 2009, and Wade adopted Melinda's biological son, born in 1999. Melinda also has a daughter, who is a half-sister to all three sons involved in this case; the daughter lives with her father and stepmother.

In 2009 Wade and Melinda filed for divorce in Texas. Texas granted the divorce but did not have jurisdiction over custody matters because by then the three boys were living in Washington, where Wade, who is active-duty military, was stationed. Wade filed a custody action in Washington, and in February 2010 the Washington court appointed a guardian ad litem to investigate parental ability and the environment in each parent's household. By that time Wade was deployed to Iraq, Melinda lived in Colorado, and the boys lived in Alaska with Wade's parents.

Melinda moved to Alaska, and Wade did the same after returning from deployment. The Washington guardian ad litem reviewed records from sources in Texas, Colorado, Washington, and Alaska and traveled to Alaska to investigate. The guardian ad litem's report to the Washington court recommended that Melinda have only supervised visitation because Melinda did not have a house, job, or transportation and she needed to get settled before having unsupervised visitation. The guardian ad litem believed Melinda might have a mental disorder.

The Washington court issued a custody judgment in December 2010. It found that Melinda's "involvement or conduct may have an adverse effect on the

---

[1]    We use an initial in place of the parties' last name to protect the children's privacy.

children's best interests" because her neglect caused "mental, emotional, developmental, and behavioral issues," and that Melinda "is not capable of providing for the needs of all the children at one time." The court then created a three-phase visitation schedule. In Phase One Melinda had limited, supervised visitation. After Melinda gave Wade proof that she had a car, driver's license, insurance, and car seats for the children, she would move to Phase Two, having unsupervised daytime visitation, including one-on-one visits with each of the three boys. If further conditions were met she would progress to Phase Three, having overnight visitation with the boys.

The Washington court instructed the parties to obtain evaluations, co-parenting therapy, and family reunification therapy. The evaluations were needed to "rule out personality disorder[s] and any psychoses or mental health issues."[2] Melinda was ordered to complete parenting classes and Wade was "to take these classes if he is available to do so, given his military duties." Both parents were ordered to take a child safety course. After the Washington decision but before the current proceeding began, Melinda and Wade's oldest son was placed in a residential treatment program for reasons not relevant to this appeal.

In April 2012 Melinda filed a custody modification motion in Alaska. Melinda stated that the phased plan had never progressed, although she had met the conditions for Phase Two. She requested "50/50" legal custody and a visitation plan. As to her history of neglecting the children, Melinda stated that through parenting classes and other resources she had "educat[ed]" herself and had "tools . . . to prevent these mistakes from happening again." Wade opposed Melinda's modification motion and

---

[2]    Melinda had a mental health evaluation before the Washington order was issued. The evaluation concluded that Melinda has "angry feelings" but "does not have any signs or symptoms of a mental disorder."

requested that, rather than following the Washington court's automatic transition, Phase One continue until the court ordered Phase Two.

In November the superior court issued an interim order granting Melinda's request for limited unsupervised visitation because the requirements for Phase Two had been met. The court ordered that, because the oldest son was receiving inpatient mental health services, unsupervised visitation with him could occur only with his therapist's approval; both parents were required to meet with his therapist to discuss appropriate parenting skills. The court recommended that both parents attend parenting classes. A custody investigator was appointed; in March 2013 the custody investigator issued a report.

The custody investigator addressed Melinda's mental health issues; concerns about both parents' parenting skills, tempers, and disciplinary methods; and the children's special needs and relationships with their parents. She concluded that the children's grandparents had given them much-needed stability and were utilizing appropriate resources for their care. The custody investigator indicated both parents had improved but still had work to do. She recommended continued family therapy for Melinda, both for her own issues and to help her with the oldest son, and recommended therapy for Wade to improve his parenting skills and self-awareness. The investigator noted that Melinda had remarried and was living with her husband and his son in a one-bedroom home, and that she was expecting another child to be born in August.

Based on Alaska's best interests factors,[3] the custody investigator made a number of specific recommendations, including that: (1) Wade and Melinda share legal custody; (2) Wade retain physical custody; (3) Melinda have limited unsupervised

---

[3]     *See* AS 25.24.150(c) (outlining factors courts shall consider when determining child's best interests).

visitation with the oldest boy only with his therapy team's approval; (4) Melinda have limited unsupervised visitation with the two younger boys; and (5) if the limited visitation proved successful, after obtaining suitable housing Melinda eventually have overnight visitation with the two younger boys.

In May 2013 the superior court held a trial on Melinda's custody modification motion. Witnesses included the Washington guardian ad litem, the custody investigator, and the oldest son's therapist. The court made oral fact findings, including a detailed analysis of the best interests factors. The court stated that it would adopt in large part the custody investigator's recommendations.[4]

In September the superior court issued a final order addressing custody, visitation, and child support. The court began by noting that "[t]he parents' neglect and abusive disciplinary tactics have created mental injury in the children." But the court stated it was "optimistic for the parents and children" because Wade and Melinda "have acknowledged areas of improvement and are positive-minded concerning mental health professionals . . . in their and their children's lives." The court ordered joint legal custody and granted Wade continued primary physical custody. The court granted Melinda limited one-on-one unsupervised visitation with the two younger boys and supervised visitation with the oldest son until his therapist approved unsupervised visitation. Once Melinda "obtain[ed] suitable housing" she was to have one-day overnight visits with the two younger boys and, after nine months, two-day overnight

---

[4] Wade told the superior court he agreed with the custody investigator's recommendation that Melinda be given seven hours unsupervised visitation with the younger children on specific days. Melinda agreed with the recommendation that visitation with the oldest son would be in accordance with his therapist's recommendations. Melinda also agreed that overnight visitation was not yet feasible.

visits. The court adopted the custody investigator's recommendations requiring therapy for both parents.

The court ordered Melinda to pay monthly child support. Wade and Melinda were each assigned the federal income tax exemption for one son, and they were to alternate claiming the oldest son.

## III.   STANDARD OF REVIEW

"Trial courts have broad discretion in determining whether a proposed child-custody modification is in the child's best interests."[5] We reverse only when the court "abused its discretion or when its controlling findings of fact were clearly erroneous."[6] An abuse of discretion occurs if the superior court "assign[ed] disproportionate weight to particular factors while ignoring others."[7]

We review child support modifications and tax exemption awards for abuse of discretion.[8] "A trial court has a duty to enter findings adequate for rational appellate review when it sets a child support obligation."[9]

---

[5]   *Heather W. v. Rudy R.*, 274 P.3d 478, 481 (Alaska 2012) (quoting *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011)) (internal quotation marks omitted).

[6]   *Id.* (quoting *McLane v. Paul*, 189 P.3d 1039, 1042 (Alaska 2008)).

[7]   *Id.* (quoting *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 134 (Alaska 1997)).

[8]   *Reilly v. Northrop*, 314 P.3d 1206, 1212 (Alaska 2013) (quoting *Robinson v. Robinson*, 961 P.2d 1000, 1002 (Alaska 1998)) (reviewing modification of child support order for abuse of discretion); *Nancy M. v. John M.*, 308 P.3d 1130, 1138 (Alaska 2013) (reviewing tax exemption allocation for abuse of discretion).

[9]   *O'Connell v. Christenson*, 75 P.3d 1037, 1040 (Alaska 2003) (citing *Berkbigler v. Berkbigler*, 921 P.2d 628, 631 (Alaska 1996); *Waggoner v. Foster*, 904 P.2d 1234, 1235 (Alaska 1995); *Adrian v. Adrian*, 838 P.2d 808, 811 (Alaska 1992)).

## IV. DISCUSSION

### A. Custody And Visitation

Wade appeals both the joint legal custody award and the grant of limited unsupervised visitation. Wade raises six main points, contending the court erred by: (1) improperly relying on the custody investigator's report; (2) not considering Melinda's history of child abuse and neglect; (3) not considering Melinda's mental illness; (4) not considering Melinda's child support arrears; (5) improperly weighing the best interests factors; and (6) granting Melinda overnight visitation after she obtained "suitable" housing without defining "suitable." None of these arguments is persuasive.

### 1. Custody investigator's report

Wade argues that the court erred by weighing the custody investigator's report more heavily than other evidence. We have explained that courts are free to reject custody investigators' recommendations when other evidence supports contradictory conclusions because "custody investigators are simply expert witnesses and . . . their recommendations should be evaluated on a case-by-case basis, in the same manner as testimony presented by other witnesses."[10] "The weight to be given to expert testimony is within the province of the trier of fact."[11]

The superior court adopted the custody investigator's report and incorporated into its final order eight paragraphs of specific recommendations about how the parents should interact with the children and the need for additional therapy. Wade does not clearly contest any specific recommendation from the report and much of his

---

[10] *Chesser v. Chesser-Witmer*, 178 P.3d 1154, 1159 (Alaska 2008) (quoting *Ebertz v. Ebertz*, 113 P.3d 643, 647 (Alaska 2005)).

[11] *Ebertz*, 113 P.3d at 647 n.13 (quoting *State v. Phillips*, 470 P.2d 266, 272 (Alaska 1970)).

brief quotes directly from it, suggesting he approves of at least some of it.[12]  And at the hearing, Wade agreed with the investigator's recommendation that Melinda's limited unsupervised visitation continue.

Nothing in the record suggests the superior court improperly relied on the custody investigator's recommendations and ignored other evidence.  We see no error.

### 2.    Melinda's parenting history

Wade argues that the superior court failed to apply the statutory presumption against giving unsupervised visitation to a parent with a history of domestic violence.[13]  He suggests the Washington court's conclusion that Melinda neglected the children establishes a history of domestic violence triggering AS 25.24.150(g)'s presumption.  He also implies that the superior court clearly erred when it did not find that Melinda had a history of domestic violence.[14]

---

[12]    The investigator's report was not particularly friendly to Melinda; the report stated that she has a personality disorder and that the children's emotional problems worsened after she began unsupervised visitation.  The investigator recommended shared legal custody but emphasized that Wade should make final decisions.  The investigator also recommended that the amount of time Melinda spent caring for the two younger boys be increased gradually.  The investigator testified that Melinda was not yet ready for overnight visitation with the two younger boys because they were very active and required significant attention, she needed suitable housing, and she was soon going to be caring for an infant and unlikely to be able to devote enough attention to them.

[13]    AS 25.24.150(g) provides:

There is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child.

[14]    AS 25.24.150(h) defines "history" to require either one domestic violence

(continued...)

Wade's argument is unpersuasive. First, Wade's position on appeal is inconsistent with his statement to the superior court that Melinda should have unsupervised visitation with the two younger boys. Second, Wade points to no credible evidence in the record establishing that Melinda committed acts of domestic violence against any of the children.[15] The court found that the "parents' neglect and abusive disciplinary tactics have created mental injury in the children."[16] After considering the Washington custody order and the testimony that had been presented at trial, the court expressed "concerns . . . about past conduct" but did not make a finding that domestic violence had occurred. On this record, we see no error.

### 3. Melinda's mental health

Wade argues that the superior court erred by not considering Melinda's mental health issues. The custody investigator's report discussed Melinda's mental health and suggested ways it might affect her parenting. The superior court granted Melinda limited visitation, but it also ordered her to continue therapy as recommended by the custody investigator.[17] The court stated that all family members "need mental

---

[14]    (...continued) incident that caused serious physical injury or more than one incident of domestic violence.

[15]    *See Stephanie F. v. George C.*, 270 P.3d 737, 750 (Alaska 2012) (noting statutory definition of domestic violence).

[16]    We note that this finding was not specific to Melinda; it included Wade, and he does not challenge this finding.

[17]    The superior court ordered Melinda to engage in regular therapy with someone "familiar and competent to treat those with [a personality disorder] to address the patterns of instability and volatility in her life which are characteristic of someone with" a personality disorder.

health services" and found that, despite her mental health issues, Melinda had the ability and the desire to meet the children's needs.

Given the court's findings addressing these issues, Wade's specific argument — that the court "ignore[d] the record of evidence and testimony" in favor of its own observations of Melinda — is not supported. We see no error.

### 4.      Melinda's child support arrears

Wade quotes AS 25.20.110(b):

> When making a determination relating to child custody under (a) of this section, the court shall consider the past history of the parents with respect to their compliance with the child support payment provisions of temporary or permanent support orders or agreements relating to the child or to other children. Under this subsection, the court may consider a parent's failure to pay child support only if the parent had actual knowledge of the amount of the child support obligation and had funds available for payment of support or could have obtained those funds through reasonable efforts, as determined by the court.

Wade argues that Melinda was behind in her child support payments and that the court should have considered this at the modification hearing. Wade cites no supporting testimony, and it appears this argument was not raised before the superior court. The superior court made no findings on this point.

Melinda testified that Wade was "very aware" that she was not going to be current on her child support based on what she earned. This suggests she is behind in her support payments because she cannot afford to make them. We have held that when a party's testimony acknowledges child support is in arrears, but uncontradicted testimony shows the arrears are the result of an inability to pay, the superior court is "not required to articulate [its] consideration of the arrearage" and in such cases, we "cannot

say that failure to consider the arrearage, or the failure to articulate consideration of it, was an abuse of discretion."[18]  We see no error.

### 5.    Weighing the best interests factors

Wade also seems briefly to challenge the superior court's best interests analysis.  He argues that the first two best interests factors — the needs of the children and the ability of the parents to meet these needs — should carry more weight.  But the court made detailed findings about these factors, and testimony presented at trial supports the court's findings.  The court found that the children require mental health treatment, that the oldest son is a special needs child, that Melinda desired meeting the needs of the children, and that Wade is able to do so.  The court granted Melinda limited unsupervised visitation with the two younger boys and unsupervised visitation with the oldest son only as his therapist permits.  Wade's argument that the court did not properly weigh these factors is not supported; we see no error.

### 6.    Award of overnight visitation

Wade asks us to vacate the superior court's order for "automatic increases in contact and unsupervised visitation."  Wade appears to argue that the superior court should not have conditioned unsupervised visitation on Melinda's acquisition of suitable housing without defining "suitable."

The superior court suggested what suitable meant:  the court expressed concern that Melinda's house was too small to accommodate her, her husband, her husband's child, their new baby, and the boys.  There was testimony that Melinda lived in a one-bedroom house and Melinda admitted the house did not have adequate space for the boys to have overnight visits; she testified that she planned to find a larger home after her baby was born.  Wade asked the custody investigator about "suitable housing," and

---

[18]      *Peterson v. Swarthout*, 214 P.3d 332, 338 (Alaska 2009).

the custody investigator suggested that for overnight visits, a house with a bedroom for the two younger boys to share would be acceptable. From the context, it is clear the superior court was concerned that Melinda needed to have a house with adequate space before having the boys for overnight visitation. The term "suitable" is therefore not "unspecified" as Wade contends. We see no error.

## B.      Child Support And Dependency Tax Exemption

### 1.      Child support

Wade contends that the superior court's child support order is erroneous, arguing that: (1) it is unclear on which of Melinda's financial affidavits the court relied; (2) the court failed to consider that Melinda was underemployed; and (3) the court's consideration of Melinda's child support payments for her daughter was incorrect because Melinda is in arrears on those payments.

Wade's assertion that it is unclear on which of Melinda's documents the court relied when calculating her income has no merit. In April 2013 Melinda submitted an updated child support affidavit indicating she was earning $1,465 monthly. The court's order lists Melinda's yearly wages as $17,580. This means her monthly wages were calculated at $1,465, so the court relied on her most recent affidavit.

Although Wade argues that Melinda is underemployed, he cites nothing in the record showing he raised this issue in the superior court. And in his pre-trial motions he stated he did not object to "changing her child support calculation to reflect her current income and deductions." This issue is therefore waived.[19]

---

[19]      *Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 280 (Alaska 2001) ("A party may not raise an issue for the first time on appeal." (citing *Preblich v. Zorea*, 996 P.2d 730, 736 n.17 (Alaska 2000))).

Wade argues that the superior court erred by making a deduction of Melinda's child support obligation for her daughter from Melinda's gross income before calculating her child support obligation for the three boys. Alaska Civil Rule 90.3(a)(1)(C) allows a deduction for "child support . . . payments arising from prior relationships which are required by other court or administrative proceedings and *actually paid*." (Emphasis added.) There was testimony at trial that Melinda was behind in her child support payments for her daughter.

We note that the rule's plain language requires "actually paid."[20] Here the superior court made no findings about Melinda's support obligation for her daughter. The pay stub Melinda filed with her affidavit shows a child support deduction in March 2013 but not whether it was for the three boys or for her daughter. Absent a factual context, we decline to render an advisory opinion about what Rule 90.3(a)(1)(C) may require in this case. We therefore remand to the superior court for findings of fact and conclusions of law explaining its treatment of Melinda's other child support obligation.

### 2.   Dependency tax exemptions

Wade argues, as he did in the superior court, that Melinda is not entitled to the children's tax exemptions because she is in arrears on her child support payments. Rule 90.3(k) states that "[t]he court may allocate the dependent tax deduction for each child between the parties as is just and proper and in the child's best interests. The allocation must be consistent with AS 25.24.152 and federal law."

---

[20]      Alaska R. Civ. P. 90.3(a)(1)(C). An intermediate New York court held under a similar rule that not deducting other support payments from income was not error when "there was no evidence establishing that the [parent] actually paid [that] child support." *Baumgardner v. Baumgardner*, 951 N.Y.S.2d 64, 67 (N.Y. App. Div. 2012). An Ohio court of appeals reached the same conclusion in an unreported decision. *Tuscarawas Cnty. Child Support Enforcement Agency v. McCamant*, No. 2003AP060049, 2004 WL 203136, at *2 (Ohio App. Jan. 30, 2004).

Alaska Statute 25.24.152(a) provides:

> In an action for divorce, dissolution, or to declare a marriage void,[21] the court may not unconditionally grant to a noncustodial parent the right to claim a child as a dependent under federal income tax laws. The court may grant a noncustodial parent the right to claim a child as a dependent under federal tax laws for a tax year if the noncustodial parent satisfies the requirements of federal law and was not in arrears at the end of the tax year in an amount more than four times the monthly obligation under
>
> (1) a support order applicable to the child in cases where a payment schedule has not been established for payment of continuing support and accumulated arrears under the support order; or
>
> (2) a payment schedule if a payment schedule has been established for payment of continuing support and accumulated arrears under a support order applicable to the child.

An arrears requirement was present in the original Washington custody decision — using the same allocation as the superior court, although the specific child allocation was different — stating that "[i]f [Melinda] is not current in her child support obligation (including all obligations under this order) on December 31 of the tax year, [Wade] shall claim all three children that year."

---

[21] To the extent Melinda argues the statutory framework is inapplicable because this proceeding is for custody modification, we note that we have applied AS 25.24.152 to a case establishing initial custody, child support, and tax exemption determinations for unmarried parents, who clearly do not fit under the divorce, dissolution, or voiding a marriage umbrella. *See Skinner v. Hagberg*, 183 P.3d 486, 487, 492-93 (Alaska 2008).

Not including the arrears language when addressing the tax exemption may have been error.[22] Wade argues that Melinda currently is significantly behind in her child support obligation, but the superior court made no factual findings on this point. Whether Melinda currently is in arrears is irrelevant — the arrears will need to be calculated yearly — what matters is whether she is behind on December 31. We remand this issue to the superior court for appropriate findings of fact and conclusions of law, including consideration of whether to add the AS 25.24.152(a) arrearage requirement to the tax dependent exemption order.

## V.    CONCLUSION

We AFFIRM the superior court's custody and visitation order and REMAND for further proceedings on the superior court's child support and tax exemption orders. We retain jurisdiction.

---

[22]     We have upheld a tax exemption award when the superior court "specifically limited [a father's] right in the manner required by AS 25.24.152(a) by providing that he could claim the exemption for any given year only 'so long as he is not more than 4 months in arrears on his child support obligation as of December 31 for that year.' " *Ginn-Williams v. Williams*, 143 P.3d 949, 955 (Alaska 2006).