NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| STACEY PROVOST, | ) | |
| | ) | Supreme Court No. S-15298 |
| Appellant, | ) | |
| | ) | Superior Court No. 3VA-09-00023 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| SHANNON DOOLEY, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1531– February 18, 2015 |
| | ) | |

Appeal from the Superior Court of the State of Alaska,
Third Judicial District, Valdez, Daniel Schally, Judge
pro tem.

Appearances: Stacey Provost, pro se, Valdez, Appellant.
Michael Franciosi, The Law Offices of BixbyFranciosi, P.C.,
Valdez, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and
Bolger, Justices.

## I.    INTRODUCTION

In divorce proceedings a mother and father agreed to share equal physical custody of their two children. One year later the father relocated to California and moved to modify custody. The superior court found a change in circumstances and ultimately awarded the father primary custody of the daughter. But the superior court focused almost exclusively on the best interests of the son — whose custody status was

---

\*       Entered under Appellate Rule 214.

not at issue — while addressing the daughter's best interests only indirectly. We remand for further findings on the daughter's best interests and supplemental proceedings if necessary.

## II.     FACTS AND PROCEEDINGS

Stacey Provost (the mother) and Shannon Dooley (the father) married in 2002. Dooley adopted Provost's son, Chris, and the couple also had a daughter, Anna.[1] Chris and Anna were born in 1998 and 2003, respectively. Provost and Dooley permanently separated in March 2009. The litigation that followed was, as the superior court observed, "lengthy, arduous, and acrimonious." In August 2011 the parties entered into a settlement, agreeing to equal physical custody of Chris and Anna under a "week on/week off" arrangement.

In August 2012 Dooley moved to California. Provost filed a motion to modify custody based on Dooley's move out of state, seeking primary physical custody of both children. Dooley filed only partial opposition, agreeing that it was best for Provost to have primary physical custody at that time but requesting liberal visitation. He also asked for leave to amend his request within 90 days, based on "his new living conditions, services available," and "any input" from the Office of Children's Services (OCS). Accordingly the court granted primary physical custody of both children to Provost in a September 2012 order.

Several months later Dooley moved to modify custody, seeking primary physical custody of both children. Dooley alleged that Chris had a substance abuse problem which had continued in Provost's care and that both children were struggling academically. After a hearing in February 2013, the superior court issued an order denying Dooley's motion for a change in custody. Although the court recognized that

---

[1]     Pseudonyms have been used for the children to protect their privacy.

Dooley's move out of state represented a substantial change in circumstances, it concluded that modifying custody was not in the children's best interests.

Dooley then filed a motion for reconsideration, stating that new evidence had come to light since the February 2013 hearing.[2]  In particular Dooley claimed that on April 25, 2013, he learned that Chris "was being charged informally with contributing to the delinquency of a minor."  Dooley made additional allegations as well:  that a DirecTV installer had seen "several boxes of wine and whiskey bottles sitting out in plain sight," along with a "hand gun on the table" in Provost's home; that Chris had been caught selling marijuana and was suspended from school; and that an individual subsequently arrested on drug charges was at Provost's home and allegedly watched Anna change her clothes.

The superior court found this new evidence to be of "sufficient import" to warrant a new hearing, which was held in August 2013.  Both parties were represented by counsel.  In addition to Provost and Dooley, three witnesses testified:  the DirecTV installer, a probation officer who had worked with Chris, and Dooley's significant other. At the conclusion of the hearing, the court granted Dooley's request for custody modification, giving Dooley primary custody of Anna.  The order did not impact Chris; accordingly, Provost retained primary physical custody of him.

Provost then filed a motion for reconsideration and stay pending appeal, which the superior court denied.  Subsequently Provost filed with this court a motion for

---

[2]     Dooley's motion was entitled "Motion to Reconsider Custody Order" and cited Alaska Rule of Civil Procedure 77(k).  As a general rule, a party cannot base such a motion on new evidence. *See Magden v. Alaska USA Fed. Credit Union*, 36 P.3d 659, 663 (Alaska 2001) ("We refuse to allow a motion for reconsideration to be used as a means to seek an extension of time for the presentation of additional evidence on the merits of the claim.  To do so would defeat the limited purpose of Rule 77(k) . . . .").

stay pending appeal, which we denied. Provost now appeals the superior court's decision granting Dooley primary custody of Anna.

## III. STANDARD OF REVIEW

"The trial court has broad discretion in child custody decisions."[3] "We will reverse the superior court's decision when 'the record shows an abuse of discretion or if controlling factual findings are clearly erroneous.' "[4] "An abuse of discretion exists where the superior court 'considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others.' "[5]

## IV. DISCUSSION

### A. The Superior Court's Findings With Respect To Anna's Best Interests Were Insufficient.

Under AS 25.24.150(c) "[t]he court shall determine custody in accordance with the best interests of the child," taking into account nine factors outlined in the statute. Provost argues that the superior court abused its discretion by not properly weighing the best interests factors. As we noted in *Ronny M. v. Nanette H.*,

> The superior court need not make express findings on all statutory factors; instead, its findings must either give us a clear indication of the factors which the superior court considered important in exercising its discretion or allow us to glean from the record what considerations were involved.[6]

---

[3]     *Frackman v. Enzor*, 327 P.3d 878, 882 (Alaska 2014) (quoting *Veselsky v. Veselsky*, 113 P.3d 629, 632 (Alaska 2005)) (internal quotation marks omitted).

[4]     *Id.* (quoting *J.F.E. v. J.A.S.*, 930 P.2d 409, 411 (Alaska 1996)).

[5]     *Id.* (quoting *Siekawitch v. Siekawitch*, 956 P.2d 447, 449 (Alaska 1998)).

[6]     303 P.3d 392, 401-02 (Alaska 2013) (quoting *Chesser v. Chesser-Witmer*,
(continued...)

For instance we have upheld a superior court's decision where the court made written findings on only five of the nine statutory factors but "made lengthy oral findings which proceeded through the best interests factors."[7]  Similarly we have affirmed a custody decision where the superior court "did not expressly cite AS 25.24.150(c) . . . [but] addressed the statutory factors that were, in context of the record in [the] case, pertinent and potentially determinative."[8]

Here the superior court appeared to focus on the facts tending to show a "substantial change in circumstances."  Although a parent seeking custody modification must indeed show that a substantial change in circumstances has occurred,[9] "the ultimate focus in the custody modification context is the best interests of the children."[10]  And because the court's custody order impacted only Anna, the court was required to make findings with respect to Anna's best interests.  In this respect neither the written nor the oral findings provide a sufficient basis for us to review whether the order was reasonable.

In its Finding of Facts and Conclusions of Law, the superior court found:

> A substantial change in circumstances that affects the welfare
> of the children has occurred through the continued drug use
> by the minor [Chris] while in mother's custody, the removal
> of [Chris] from mother's home by the state, the placement of

---

**6**(...continued)
178 P.3d 1154, 1158 (Alaska 2008)) (internal quotation marks omitted).

**7**       *Chesser*, 178 P.3d at 1157-58.

**8**       *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 137-38, 141 (Alaska 1997).

**9**       *Collier v. Harris*, 261 P.3d 397, 403 (Alaska 2011) ("A parent seeking to modify physical custody must . . . demonstrate that a substantial change in circumstances has taken place since the last custody order was entered.").

**10**      *Williams v. Barbee*, 243 P.3d 995, 1001 (Alaska 2010) (quoting *Lashbrook v. Lashbrook*, 957 P.2d 326, 328 (Alaska 1998)) (internal quotation marks omitted).

the minor [Chris] in the youth detention facility and ultimately in an inpatient treatment facility and by implication the potential for harm to [Anna] if she remains in mother's custody.

The court also found that "it is in the best interest of the minor child [Anna] that father have primary physical custody." But it is not apparent from the written findings how the court reached this conclusion.

Nor is it clear from the court's oral findings "which [statutory factors] the superior court considered important in exercising its discretion."[11] The court made specific oral findings with respect to the requisite "change in circumstances," highlighting the change in Chris's residence, Chris's involvement in the juvenile justice system, and "the evident worsening" of Chris's substance abuse issues. But the court made no similar findings regarding Anna's best interests.

It does appear that the superior court viewed Chris's substance abuse and involvement with the juvenile justice system as a reflection on Provost's "ability to parent." The court surmised that it was not irrational to hold Provost responsible "for things that occur on her watch," summarizing this argument as follows: "if so went the older child, so could go the younger child if that child remains on mom's watch or in mom's primary custody." As the court reasoned, this is "not a bad argument" because "past performance can [very] well be an indicator of future performance." But the court's reasoning was "somewhat speculative," as the court in part admitted. Given that Chris's substance abuse issues began before the parties even separated, it is impossible to determine whether the superior court abused its discretion in concluding that Chris's struggles warranted custody modification with respect to Anna.

---

[11]    *See Ronny M.*, 303 P.3d at 402 (quoting *Chesser*, 178 P.3d at 1158) (internal quotation marks omitted).

The court also referenced concerns about Anna's academic performance, which were discussed at the original custody modification hearing in February 2013. The court surmised that because Chris and Anna were "bright, intelligent children," poor academic performance could "be a manifestation of . . . other stresses or concerns in the children's lives," such as issues involving substance abuse, mental health, or "stresses in the . . . custodial parent's home." But no updated information regarding Anna's academic performance was presented at the August 2013 hearing, and it is unclear how this issue informed the court's decision.

The superior court raised other issues arguably impacting Anna's best interests, but these appeared to play only minor roles in the court's analysis. For instance the court referenced concerns about the conditions in "Provost['s] household." The court appeared to credit testimony from the DirecTV installer, who had noted "some fairly significant disarray issues [in Provost's home], the presence of alcohol or alcohol containers," and "[s]ome controlled substances, although it sounded like they were prescription controlled substances." But the court described this testimony as a "small thing[]" and explained that "standing alone," it would not be enough to warrant custody modification. Similarly the court speculated that Chris's arrival home from residential treatment could take attention away from Anna, but clarified that this played "a more minor role in the court's consideration."[12]

Other best interests factors were expressly addressed in the superior court's oral findings, but none appeared to favor custody modification. First the court appeared

_____

[12]     The court also discussed the presence of an alleged drug dealer "on the periphery" of the Provost household and surmised that he might be providing Chris with illegal substances. But it was unclear from the record how much control Provost had over this individual's presence, and in any event, the court made no specific findings about this person with respect to Anna's best interests.

to address "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity,"[13] noting that although moving "thousands of miles away to another state" would be a significant change for Anna, she seemed very likely to adapt and had "just spent the last several months . . . getting to know the area." But the court described this factor as "a wash."  The court also touched on another best interests factor, a parent's "willingness and ability . . . to facilitate and encourage a close and continuing relationship between the other parent and the child."[14]  Yet the court expressly characterized this factor as a "strike against" Dooley.  Although the court described Anna as "approaching the age when the court could consider her desires,"[15] the court noted that it had not been asked to consider Anna's views.  Finally the court found "no reason to believe that . . . [Anna] doesn't love both parents pretty much the same" and observed that "each parent loves her."[16]

The superior court did describe this as "a very close case," noting that some factors weighed "in one direction" and "some . . . in another."  But it is not clear from the court's findings which factors it considered important in awarding Dooley primary custody of Anna.  Because we cannot "glean from the record what considerations were

---

[13]     *See* AS 25.24.150(c)(5).

[14]     *See* AS 25.24.150(c)(6).

[15]     *See* AS 25.24.150(c)(3) (describing one best interests factor as "the child's preference if the child is of sufficient age and capacity to form a preference").

[16]     *See* AS 25.24.150(c)(4) (describing one best interests factor as "the love and affection existing between the child and each parent").

involved" in this decision,[17] we remand for findings on Anna's best interests. The court may hold supplemental proceedings if necessary to make these findings.[18]

**B.** **Neither Of The Evidentiary Issues Provost Raises Warrants Reversal.**

Most of Provost's arguments on appeal relate to the superior court's consideration of the best interests factors. We cannot reach these points because we find remand necessary to determine what the court considered. But Provost also raises certain evidentiary issues, which we address in order to provide guidance to the court on remand.

**1.** **The DirecTV installer's testimony**

Provost argues that the court erred by considering testimony from one of Dooley's witnesses, a DirecTV installer. In relevant part the witness testified that in his capacity as a DirecTV installer, he had been to Provost's residence on "numerous occasions" and that on one occasion, he saw "quite a bit of alcohol" in the living room, along with a "couple" prescription drug bottles and what he was "almost positive" was

---

[17] *See Ronny M.v. Nanette H.*, 303 P.3d 392, 401-02 (Alaska 2008) (internal quotation marks omitted).

[18] Provost argues that the superior court erred in declining to apply the domestic violence presumption set out at AS 25.24.150(g). Provost raised the issue of domestic violence in a motion prior to the original custody modification hearing, pointing in part to the entry of a long-term protective order against Dooley in 2009. During the February 2013 hearing, at which Provost appeared unrepresented, the judge advised her that events occurring prior to the parties' custody settlement in late 2011 were irrelevant. But we have previously said that "in custody matters involving domestic violence," a superior court should "look back to events that occurred before the initial custody order if not adequately addressed at the initial custody determination or subsequent proceedings." *McAlpine v. Pacarro*, 262 P.3d 622, 626 (Alaska 2011). Provost arguably had an opportunity to raise the issue of domestic violence at the subsequent hearing in August 2013, at which she appeared with counsel. Nonetheless, on remand, the court should consider all proffered evidence of domestic violence, including events that may have preceded the parties' 2011 settlement agreement.

a gun. Provost points out various inaccuracies in the DirecTV installer's testimony and alleges that he was not credible because he was employed by Dooley's father.

"It is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence."[19] It is true that Provost offered evidence that, if accurate, would impeach the DirecTV installer's testimony: namely, that she was not living at the residence in question during the relevant time period; that unlike the home the DirecTV installer described, her home had "toys, scooters, [and] skateboards" out front; and that she used a different service provider, GCI Cable.[20] But the judge had an opportunity to hear from both Provost and the DirecTV installer, and accordingly it was the superior court's role to weigh the witnesses' conflicting testimony.

Similarly the record supports the superior court's rejection of Provost's claim that the DirecTV installer was biased because he had been hired by a company where Dooley's father was a manager. The witness testified that he was not hired by Dooley's father and had no contact with the Dooleys about his employment. The record does not show that the superior court erred in considering the DirecTV installer's testimony.

### 2. Evidence from OCS

Provost appears to argue that the superior court erred by refusing to consider two letters from OCS and excluding Provost's testimony at the February 2013 hearing about OCS's alleged involvement with Dooley in 2012. In particular Provost sought to present evidence that OCS had substantiated an allegation of Dooley's child neglect and had interviewed the children about alleged physical and verbal abuse. But OCS's letters

---

[19]   *Knutson v. Knutson*, 973 P.2d 596, 599-600 (Alaska 1999).

[20]   The DirecTV installer had testified that he would not have been at a home with GCI and that repairing GCI's equipment would be "illegal."

were hearsay,[21] and Provost called no witness to testify about any OCS finding or assessment.

Provost appeared unrepresented at the February 2013 hearing, and it is unclear whether she understood that she would need to present a witness from OCS to bring in evidence of an OCS finding against Dooley. But any confusion arising from this initial hearing was cured by subsequent events. Provost had an opportunity to present evidence of OCS's findings at an August 2013 hearing, at which she was represented by counsel. Neither Provost nor her attorney made any such offer. Accordingly the superior court did not err by failing to consider OCS's letters or other evidence of OCS's involvement with Dooley in 2012.

## C. Provost Waived Her Argument That No Substantial Change In Circumstances Had Occurred.

A motion to modify custody requires a "substantial change in circumstances," which "is measured relative to the facts and circumstances that existed at the time of the prior custody order."[22] In its May 2013 order, the superior court found that Dooley's August 2012 move constituted the requisite "change in circumstances." Although Dooley's move had technically occurred before the issuance of the prior custody order in September 2012, the court treated the move as an "ongoing" change in circumstances for the purposes of Dooley's motion to modify custody.

Provost now asks this court to review the superior court's finding "granting the [custody] modification . . . due to the change in circumstances that Dooley moved,"

---

[21]     The "public records" exception to the hearsay rule was never raised. *See* Alaska R. Evid. 803(8). But because the OCS letters contain "factual findings resulting from special investigation of a particular complaint, case, or incident," they would likely be inadmissible in any event. *See* Alaska R. Evid. 803(8)(b)(iv).

[22]     *Frackman v. Enzor*, 327 P.3d 878, 882 (Alaska 2014) (quoting *Barrett v. Alguire*, 35 P.3d 1, 5-6 (Alaska 2001)) (internal quotation marks omitted).

given that "there had already been a custody order following Dooley's move." But Provost mentions this issue only in her statement of points on appeal,[23] and does not further develop it.

Under this court's "well-established rule" — a rule that "applies equally to pro se litigants" — "issues not argued in opening appellate briefs are waived."[24] In *Zok v. State* we specifically noted that a pro se appellant waived an argument where he mentioned it only in his statement of points on appeal but "provided no substantive argument."[25] As we have also noted, the failure to argue a point in an opening brief "leaves the other party with no notice or opportunity to respond."[26] This is particularly true here, where Provost never raised the issue at either custody modification hearing. Accordingly Provost's contention that Dooley failed to show a substantial change in circumstances is waived.[27]

---

[23]   This section of Provost's opening brief was titled "Standard of Review," but Provost appears to treat it as a statement of points on appeal.

[24]   *Hymes v. DeRamus*, 222 P.3d 874, 887 (Alaska 2010).

[25]   903 P.2d 574, 576 n.2 (Alaska 1995).

[26]   *Hymes*, 222 P.3d at 887-88.

[27]   In her reply brief, Provost also argues that "[a] final custody order should not be undone because a . . . sibling gets in trouble, especially since he was acting out before Dooley moved. Dooley showed no evidence that there was a substantial change in [Provost's] home that negatively [affected] the children since [Dooley's move]." But for the reasons noted above, this argument was also waived for failure to raise it in the opening brief.

## V.    CONCLUSION

For the reasons detailed above, we REMAND this matter to the superior court for additional findings as to Anna's best interests and supplemental proceedings if necessary. The superior court may modify its previous custody order as required by its findings. We do not retain jurisdiction of this matter.